PEOPLE v. PORTER.

1. ARSON—CORPUS DELICTI.

Corpus delicti in arson includes not only the fact of a fire but also that it was unlawfully caused by a person.

2. CRIMINAL LAW—CORPUS DELICTI—CONFESSIONS—ADMISSIONS.

Rule that corpus delicti must be established dehors a confession is confined to confessions and does not extend to admissions of facts which do not of themselves show guilt.

3. SAME—CONFESSIONS—EVIDENCE.

    A confession is an acknowledgment of guilt and necessarily excludes acts of guilty conduct, exculpatory statements and admissions of subordinate facts that do not constitute guilt.

4. SAME—CORPUS DELICTI—EVIDENCE.

    Exclamations to mother and statements of facts to deputy sheriff by one charged with arson, which did not amount to confession of guilt were admissible as proof of *corpus delicti*.

5. SAME—CORPUS DELICTI—GUILT—ORDER OF PROOF.

    Rule that *corpus delicti* should be proved before evidence against the accused is received refers more to order of proof rather than admissibility of evidence and is relaxed where same set of facts tends to prove both crime and guilty person.

6. ARSON—GUILT—CORPUS DELICTI—EVIDENCE.

    Arson is so peculiarly a crime of secrecy that acts and admissions of one accused thereof are admissible as proof of the *corpus delicti* where it and proof of defendant's guilt rest upon same state of facts which cannot be separated to permit proof of one without proving the other.

7. SAME—CIRCUMSTANTIAL EVIDENCE—NEW TRIAL—OVERWHELMING WEIGHT OF EVIDENCE.

    Circumstantial evidence in prosecution for arson, consisting of proof of defendant's acts during and immediately after the fire and her account of it, *held*, sufficient when taken in connection with other testimony to warrant denial of a new trial since the verdict may not be said to be against the overwhelming weight of the evidence.

Appeal from Kent; Brown (William B.), J. Submitted October 11, 1934. (Docket No. 125, Calendar No. 37,867.) Decided December 10, 1934. Rehearing denied January 29, 1935.

Winifred Porter was convicted of arson. Affirmed.

*Clapperton & Owen* (*Irving H. Smith*, of counsel), for appellant.

*Patrick H. O'Brien,* Attorney General, *Bartel J. Jonkman,* Prosecuting Attorney, and *Menso R. Bolt,* Assistant Prosecuting Attorney, for the People.

FEAD, J.  Defendant was convicted of arson, in burning (a) a dwelling house, and (b) personal property with intent to defraud an insurance company.

Her principal claim is that both at the examination and trial the people failed to prove the *corpus delicti* apart from her own statements and that her own statements were inadmissible for that purpose. She saved the point for review by proper objections and motions.

The fire occurred July 19, 1933, a bright, hot day, with strong west wind, at defendant's home. The house faced east, had four rooms, kitchen, front room, two bedrooms, and an attic, but no stairs. It was rather dilapidated and had cracks in it which permitted free ventilation of the attic. It was not insured. Twenty-five feet from it was a small one-car garage. Defendant had furniture for a seven or eight room house before she married Porter, and he had some furniture. Much of it was stored in a room in the home, which belonged to Porter's mother's estate. Defendant and her husband had lived in the house about 14 months. It was not in the city but there were a store and gas station and several neighbors within a half mile, one only 20 rods away.

At the examination defendant's brother, Milton Wecker, testified that about nine o'clock in the morning he called on her, went into the garage, and did not notice any furniture, tub of fruit jars or dishes, floor lamp or bird cage standard. At the trial he said he saw some furniture and a bird cage in the garage.

Late in the morning defendant was seen going south to a store at a normal pace and with her dog. She returned about noon with a loaf of bread and a small parcel. About a half hour later she went south again with her dog and at a normal walk. When she reached Leonard road, a paved street, she increased her pace and looked back toward the house several times. About three o'clock in the afternoon she reached her mother's house five miles away and said either that her house was burning down or it was full of smoke.

About a half hour after defendant left home, neighbors saw smoke and went to the house. Flames were coming through the front, above the porch. All windows and doors were closed. The back door was locked. Men broke in and carried out an oil stove, gas stove and washstand. There was fire in the front room. One said it was ''a mass of blaze coming from the floor up;'' another saw flames on the east wall and said it looked all ablaze. Another said the fire seemed to be all over the east wall inside. They saw no furniture in the front room except a heating stove. When the house burned to the ground only the stove and two iron beds were found in the debris. After the fire some of them looked into the garage and saw it was full of furniture, a breakfast table and chairs, floor lamp, bird cage standard, clothes of defendant and her husband, tub of fruits in jars, tub of dishes, card table, loaf of bread and a lemon, big armchair, bookrack, bedding, hall tree with clothes on it, and pots and pans.

Defendant's theory was that the fire caught in the attic from the chimney. There was dispute in the testimony whether the chimney was cracked before the fire. None of the witnesses who arrived first saw any fire close to the stove or chimney. There

was testimony that, because of the west, wind, fire from the chimney would likely catch in the east end of the house. The physical evidence indicates that the fire caught from the chimney in the attic or was set in the front room, went up through the ceiling and broke out of the house above the porch.

At the trial defendant testified that she took some of the furniture to the garage to paint or varnish it; she was cleaning house and took other furniture and bedding and clothes into the yard; the stove in the front room had an accumulation of paper and she lighted it; the chimney burned out; about 11 o'clock she was hungry, went down to the store for bread and milk; as she stepped outdoors soot was flying all over; when she came back the house was full of smoke; she became excited, took dishes, canned fruit and some of the furniture and the clothes off the line and put them in the garage; the smoke was on the ceiling, working its way down; she decided to go for help; she went to Leonard street, passing a neighbor's house on the way; she hailed an automobile and asked for assistance, another car stopped and the driver questioned her, and both cars went on; she was nervous and excited and kept on walking, stopped once to telephone a neighbor of her mother's and finally reached her mother's home and told her stepfather her house was full of smoke; she closed the back door when she left and thought she could get quicker help from cars on the highway than from neighbors.

The day after the fire defendant notified the insurance agent, who called on her and requested her to make a list of goods. She gave the clerk the list of articles, afterwards appraised by herself and the agent at about $1,800. However, when the agent went over the list with her she voluntarily mentioned

articles upon which she did not make claim because they had been saved.

At the examination a deputy sheriff testified to statements made by defendant to him to the effect that she had been cleaning house; had lighted papers which had accumulated in the stove in the front room; when she came back from the store she discovered a fire in the attic and got excited, went out to the road, stopped a car and told the driver there was a fire at the home, but no attention was paid to her; so she walked to her mother's house; she thought the fire was caused from the stove; it was first in the attic around the chimney; everything had been destroyed; she had saved no clothing; she did not know how the things got into the garage nor what had become of them.

At the trial the officer repeated the testimony in substance and also that defendant said she did not seek help at the nearby business places because of trouble between her dog and others. Defendant denied making such statements to the officer.

The *corpus delicti* in arson includes not only the fact of a fire but also that it was unlawfully caused by a person.

Defendant urges that the testimony of her exclamation at her mother's home and of her statements to the officer was incompetent as evidence of the *corpus delicti* and, therefore, the crime was not proved. *People* v. *Kirby,* 223 Mich. 440; *People* v. *Lee,* 231 Mich. 607. Defendant gives those cases much broader scope than they warrant. They held that the *corpus delicti* must be proved before a confession is admissible and that proof of crime must be established *dehors* the confession. The rule is confined to confessions. In the *Kirby Case* the statement of defendant was an admission of fact con-

stituting a direct confession of guilt. In the *Lee Case* the admission was of conduct subsequent to the offense and not directly connected with its commission, which the court construed as a confession of guilt. The cases do not purport to render inadmissible statements of fact by the accused which do not amount to a confession of guilt of the offense.

Defendant does not distinguish between confessions and admissions of fact. If the fact admitted necessarily amounts to a confession of guilt, it is a confession. If, however, the fact admitted does not of itself show guilt but needs proof of other facts, which are not admitted by the accused, in order to show guilt, it is not a confession but an admission and, therefore, is not within the range of cases cited.

The distinction between confessions and admissions is pointed out in 2 Wharton's Criminal Evidence (10th Ed.), p. 1266 *et seq.* He says:

"§ 622a. * * * A confession is an acknowledgment of guilt. * * *

"§ 622b. A confession, although differently phrased by different courts, being an acknowledgment, in express terms, by a party in a criminal case, of the truth of the crime charged, by the very force of the definition logically excludes: first, acts of guilty conduct; second, exculpatory statements; third, admission of subordinate facts that do not constitute guilt. Much of the confusion that exists in the case law would be readily avoided if courts carefully measured every confession by the rule of direct acknowledgment of guilt, as entirely distinguished from acts, exculpatory statements, and admissions. * * *

"3. There must be some distinctive feature, showing guilt, in the fact acknowledged, and all other statements than those directly stating the fact of guilt are without the scope of the rule affecting the use of confessions. * * * Hence, the third ground

of exclusion is that the admission of subordinate facts, not directly involving guilt, do not constitute a confession."

As illustrating statements which are not confessions, Wharton cites:

"Nor the statement of incriminating facts; nor a statement from which guilt might be inferred; nor, on a trial for forgery, an admission by accused that he wrote the signature, unless he also admits that he did it with a fraudulent intent; nor where, sometime after the burning of a barn, the accused stated that the house was insured and might 'go to blazes with the barn,' it not even being an admission that accused had burned the barn."

In 16 C. J. p. 716, it is said:

"Although it may be received in evidence, an admission by word or act of an inculpatory fact from which the jury may or may not infer guilt, but which falls short of being an acknowledgment of guilt, is not a confession. Also an admission of one, but not of all, the essential elements of the crime is not a confession."

Here, defendant's exclamation and statements were not part of a confession nor did they, of themselves, amount to a confession of guilt. They were merely admissions, which needed other facts to give them convicting force, and, therefore, were admissible on the *corpus delicti*.

Defendant also invokes the rule, not the same one, that the crime should be proved before evidence against the accused is received. But this rule goes more properly to the order of proof than to the admissibility of evidence. In any event, it is relaxed in those cases where the same set of facts goes to prove both crime and guilty person. *People* v. *Jackzo*, 206 Mich. 183; 16 C. J. p. 865.

The crime of arson is so peculiarly one of secrecy that often the only evidence of the unlawful character of the fire is found in the acts and admissions of a person having opportunity and motive. This is such a case. Defendant was alone in the house. Only she knew whether the fire was innocent or evil. If evil, she set it. The only means of determining the character of the fire, aside from inconclusive physical evidence, were her conduct and statements and their consistency with innocence or guilt. Both the *corpus delicti* and defendant's guilt rested upon the same state of facts and the evidence could not be separated to permit the proof of one without also proving the other.

Defendant also contends she should have been granted a new trial because the verdict was against the great weight of the evidence. The people were necessarily confined to circumstantial evidence. Defendant's acts during and immediately after the fire, and her account of the fire, and reasons for her conduct, were unusual, contrary to ordinary behavior, illogical and indicative of guilt. Taken in connection with the other testimony, we cannot say the verdict was against the overwhelming weight of the evidence.

Affirmed.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.