**OPPER v. UNITED STATES.**

**No. 11711.**

United States Court of Appeals
Sixth Circuit.

March 26, 1954.

Writ of Certiorari Granted
June 7, 1954.

See 74 S.Ct. 867.

John M. Kelley, Jr., Miami, Fla. (Francis C. Canny, Dayton, Ohio, Alexander Campbell, Ft. Wayne, Ind., John M. Kelley, Jr., Miami, Fla., on the brief), for appellant.

Richard H. Pennington, Asst. U. S. Atty., Cincinnati, Ohio (Hugh K. Martin, Thomas Stueve, Richard H. Pennington, Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

Appellant William J. Opper and Robert George Hollifield, Sr., were jointly charged, in an indictment containing four substantive counts and a conspiracy count, with violating Title 18 U.S.C. § 281 and conspiring to violate § 281

and to defraud the United States within the meaning of Title 18, § 371. Count 1 of the indictment in substance charged that Hollifield, an employee of the United States, agreed to receive $1750 as compensation from appellant for services to be rendered in relation to purchase requests in which the United States was directly interested, the services to consist of Hollifield's recommending the approval and procurement by the Air Force of the United States of certain types of sun goggles and ski goggles. Count 2 charged that on March 1, 1951, in Dayton, Ohio, Hollifield received from appellant as compensation for the rendition of such services $50. Count 3, a charge similar to Count 2, set forth the receipt by Hollifield from appellant of $250 on or about March 1, 1951, while Count 4 charged the receipt of $200 from appellant under similar circumstances on the 5th day of August, 1951. As to each of these counts it was charged that appellant aided, abetted, counseled, induced and procured the defendant Hollifield unlawfully to receive such compensation for the services rendered. Title 18 U.S.C. § 2.

Count 5 charged a conspiracy between Hollifield and appellant to cause Hollifield to perform such unlawful acts between October 1, 1950, and September 26, 1951. Thirteen overt acts were set forth, including the receipt of several sums of money by Hollifield from appellant.

A motion for severance was denied and the defendants were tried together. The jury found appellant guilty on all counts. The court sentenced him to imprisonment for two years on Count 1 and one year on Count 4, the sentences to run consecutively, to pay fines of $500 on Counts 2 and 3, and to be imprisoned for a period of one year and a day on Count 5, the sentence on Count 5 to run concurrently with the sentences on Counts 1 and 4.

Hollifield was employed by the United States Air Force at Wright Field, Dayton, Ohio, being a designer supervisor (aviation clothing and equipage). In this position he worked under the general supervision of the Chief, Medical Specifications Branch, with opportunity for "wide use of creative initiative and independent judgment in planning and supervising the accomplishment of land survival equipment." His duty was to review and discuss first samples produced "to determine compliance with specifications." As project supervisor of survival kits, it was Hollifield's duty to pass upon the conformity to specifications of the various items in the kit, including goggles. Appellant had been acquainted with Hollifield for several months, having met him in October, 1950, and having seen him some 15 times during the period involved. A resident of Chicago and subcontractor on various projects for the equipping of survival kits, appellant submitted to two prime contractors compasses and goggles for the kits. It was proved that certain goggles which had been supplied by appellant to a prime contractor had been recommended for rejection by the Chief, Physiology Branch Aero Medical Laboratory, on January 23, 1951, because of "marked deviations" from the applicable specifications. Hollifield, as admitted by appellant, had discussed this matter with appellant. Shortly after the recommended rejection Hollifield secured a conference with Frederick Moss, a project engineer of the Physiology Branch, and other employees of the Air Force. Appellant attended this conference and in his presence Hollifield urged that the goggles be accepted. At the conference it was concluded that Hollifield should embody his reasons for recommending acceptance in a routing and record sheet and this was done. The routing and record sheet stated: "Confirming conversation between Messrs. F. Moss and O. Strand of your Branch and Messrs. R. Hollifield and N. Murray of Medical Specialties Branch, it would be appreciated if your office would reconsider the use of the goggles submitted to determine their conformity with subject item, in view of the following information." While the routing and record sheet was signed by Randall W.

Briggs, it bore the initials of Hollifield and, in asking for reconsideration, stated substantially the reasons Hollifield had advanced at the oral conference above described as to why the rejection of the goggles should be changed. Reconsideration was granted and the use of the substitute goggles submitted by appellant was recommended on February 3, 1951.

At the trial a written statement of appellant was introduced in which he admitted payment of $1,000 to Hollifield in April, 1951, and payment of $200 several weeks later. Hollifield telephoned long distance to appellant and flew to Chicago from Dayton on April 14, 1951. The two payments, totalling $1,200, appellant declared to an FBI agent, constituted a loan made because Hollifield told appellant on this visit that he was about to lose his home. Appellant said he had never seen Hollifield's home and that he did not know of his own knowledge that Hollifield had a home. He said that no interest was charged, that he obtained no security of any kind, that he had no receipt nor any record to evidence the loan. No promissory note was claimed to have been received.

Appellant contends that all of his statements, both oral and written, and several made by Hollifield which were received in evidence should have been stricken from the record upon the ground that there was no corroborative evidence to render admissible these statements claimed to be confessions. He also contends that the motion for acquittal should have been granted on the ground that there was no competent evidence of appellant's guilt. This is on the basis that, aside from the written statement and oral declarations made by appellant, there was complete failure of proof.

These contentions were urged at great length before the distinguished and experienced trial judge who heard the case. We think the District Court was correct in overruling the motion to strike the statements and declarations. The several confessions and self-incriminating declarations of Hollifield were freely and voluntarily given and were entirely competent against Hollifield. Wilson v. United States, 162 U.S. 613, 623, 16 S.Ct. 895, 40 L.Ed. 1090. The court admonished the jury repeatedly, clearly and forcefully not to consider the statements of Hollifield as binding upon the appellant and not to consider appellant's statements as binding upon Hollifield. He reiterated these admonitions in his charge. The statements and admissions made by appellant were also freely and voluntarily made. They relate not only to the conspiracy charge but also to the substantive crimes charged in the indictment. Since the appellant's declarations were admitted, not against Hollifield but against himself, the question whether they were made in the course of carrying out the conspiracy has no bearing. Clearly appellant's statements were competent and relevant under his own indictment. Perovich v. United States, 205 U.S. 86, 91, 27 S.Ct. 456, 51 L.Ed. 722.

The written statement which appellant gave to the FBI agent after various conversations reads as follows:

"I have been asked to submit a statement relating to my so called dealings with Robert Holafield.

"In the winter of 1950, as best I can recall, I was at Dayton, Ohio then visiting with the firm of Cappel & MacDonald & Company with whom I had numerous business transactions. At the office of this firm I met Mr. Holafield and in a discussion about things made for the armed forces, Mr. Holafield then stated that the next time I was in Dayton to visit him at Wright Field. Sometime later I went to Wright Field and saw Mr. Holafield and had a social visit with him. We discussed no particular matters of any kind. Sometime later when I visited Mr. Holafield at Wright Field I discussed with him the possibility of making a wrist compass that was being required by the armed forces as well as using my $3/4$ inch compass in any future kit. While there I saw photographs of numerous items

being used and some of the items seen by me I recognized as items that I furnished to prime-contractors.

"Sometime in the spring of 1951 I learned about an objection to a goggle and decided while in Dayton, Ohio visiting Cappel & MacDonald & Company to discuss the matter with Mr. Holafield. At that time Mr. Holafield stated that he did not know what objection was being made and that if I care to know specifically what that objection was to talk with someone in the optical department. Mr. Holafield and myself then went to the optical department and I tried to learn what specific objection was being made and was informed that there was some slight difference in the lense specification.

"I wish to be understood that at no time had I requested Mr. Holafield to do anything on my behalf. I was making no sale to the government as my sales were at all times confined to prime-contractors, who I understand obtain approvals.

"Sometime in the early part of 1951 Mr. Holafield had been in Chicago and our respective families visited socially. Sometime in April, as best I can recall, Mr. Holafield communicated with me and indicated that he was hard pressed financially and although I felt no moral or legal obligation to Mr. Holafield in any manner I indicated to him that if I could help him I would try to do so. When he visited Chicago he called upon me and stated that the reason for his financial distress was that he had to meet a mortgage on his home of approximately $1,200.00. Being mindful of the fact that I could help him financially and being charitable I gave Mr. Holafield $1,000.00 which he promised to repay when he was financially able to do so and a few weeks later gave him $200.00. I realize now the foolishness of my act but had no motive in so doing except in making him a loan."

Appellant contends in this court that this statement should be excluded upon the ground that confessions may not be admitted in evidence unless corroborated independently. Cf. United States v. Markman, 2 Cir., 193 F.2d 574. But an exculpatory statement denying guilt is not a confession. Wigmore on Evidence, Vol. 3, § 821. The appellant did not confess guilt, he denied it. He did not admit that he participated in or aided and abetted Hollifield in violating the statute as charged in the indictment. Instead of acknowledging fault he asserted that the payments to Hollifield were a loan. Such statements are not confessions. State v. Gilman, 51 Me. 206, 225; State v. Cadotte, 17 Mont. 315, 42 P. 857; State v. Novak, 109 Iowa 717, 79 N.W. 465; People v. Kristy, 111 Cal. App.2d 695, 245 P.2d 547; Bruner v. People, 113 Col. 194, 156 P.2d 111; People v. Porter, 269 Mich. 284, 257 N.W. 705. Decisions upon the admissibility of confessions have no bearing upon the admissibility of appellant's statements and declarations not constituting confessions, which tended to show that an arrangement had been made between Hollifield and the appellant under which Hollifield was to be compensated by appellant in connection with Hollifield's official duty in procurement. The rendition of service by Hollifield to appellant was proved and the subsequent payment of money by appellant to Hollifield under unusual circumstances was admitted. The jury was entitled to consider appellant's statement admitting the payments, in the framework not only of its unusual conditions, but against the background of the reconsideration of the rejection of the sun goggles clearly shown to have been initiated by Hollifield in the presence of appellant. However, as to Counts 2 and 3, which charged the receipt of the sums of $50 and $250, respectively, by Hollifield from appellant on or about March 1, 1951, there is no competent evidence supporting the receipt of these particular sums. Hollifield made a statement to this effect but, as the District Court correctly charged,

this could not be considered as evidence against the appellant. The motion for acquittal on Counts 2 and 3 should have been granted.

The District Court correctly found that the verdict was unanimous. The juror Ramon J. Marker three times stated in open court that the verdict was his. Other questions raised by appellant present no reversible error. The judgment is reversed as to Counts 2 and 3 of the indictment and in all other respects is affirmed. The case is remanded to the District Court with instructions to dismiss Counts 2 and 3 of the indictment so far as they relate to the appellant and to correct appellant's sentence in conformity with this opinion.