**VERTEX INTERNATIONAL MANAGEMENT SERVICES, L.L.C., Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant.**

**Case No. 10–cv–12637.**

United States District Court, E.D. Michigan, Southern Division.

Signed June 29, 2011.

---

ance policy with Vertex when it failed to pay insurance benefits after the property was destroyed by a fire. State Farm contends that this action is barred because Vertex failed to comply with the policy's pre-suit requirements, specifically, the requirement that Vertex provide State Farm with all requested documents during State Farm's investigation. State Farm has moved for summary judgment on this defense, seeking a dismissal of the action with prejudice. A hearing on the motion was held on May 19, 2011. For the reasons stated below, the Court will grant the motion in part, and will dismiss the action without prejudice.

## BACKGROUND FACTS

The following facts are either undisputed or, if disputed, stated in the light most favorable to Vertex, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Mark Gordon owns Vertex, a Michigan limited liability company that buys and sells real property. Gordon Examination Under Oath ("EUO") 26, 41. In 2007, he purchased ownership interests from the company's earlier owners, Gordon's daughter and sister. *Id.* at 33, 42. He manages the business from his home in De Soto, Texas, where he has lived since 2007. *Id.* at 19, 38. Between 2007 and 2008, Vertex sold almost $2 million worth of real estate. *Id.* at 128–29. At the time of Gordon's EUO on September 21, 2009, Vertex owned four to five residential properties. *Id.* at 38.

At some point, Vertex purchased a Rental Dwelling Insurance Policy ("Policy") from State Farm to insure residential premises (and the contents therein) located at 19489 San Juan Street, Detroit, Michigan ("Property"). Policy (Def.'s Mot. ex. A). Vertex leased the Property to Tanea Thomas beginning March 2009, for

Bruce F. Rosenthal, Bruce F. Rosenthal, PC, Michael S. Hohauser, Sarah E. Kuchon, Hohauser Law Firm, Troy, MI, for Plaintiff.

Paul H. Johnson, Jr., Amy L. Wille, Patrick, Johnson, Southfield, MI, for Defendant.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket no. 15) AND DISMISSING ACTION WITHOUT PREJUDICE*

STEPHEN J. MURPHY, III, District Judge.

This is an insurance coverage case. Plaintiff Vertex International Management Services, LLC ("Vertex"), owner of a residential rental property in Detroit, alleges that State Farm Fire and Casualty Company ("State Farm") breached its insur-

$1,000 per month. EUO 92; Thomas dep. 15.

A fire started at the Property in the morning hours of June 21, 2009. Thomas was not home at the time. She had gone to her mother's apartment the evening prior. Thomas dep. 27. Gordon was in Texas at the time. EUO 108. Shortly thereafter, on July 20, 2009, Vertex submitted a Sworn Statement in Proof of Loss to State Farm, making a $119,983.49 claim for losses sustained to the building itself, a $3,900 claim for damage to property located in the building, and a $900 claim for lost rent. Sworn Statement (Def.'s Mot. ex. N).

State Farm assigned Ellwyn Albee to handle the claim. Albee initiated an investigation to determine the validity of Vertex's claim, in part, due to what were believed to be "suspicious circumstances" surrounding the cause of the fire. Albee Aff. ¶¶ 5–6. Albee hired a fire investigator, Michael J. Waite, to investigate the cause and origin of the fire. *Id.* ¶ 5. Waite concluded that "[b]ased on information and evidence available to me at the time of this investigation, ... the cause of this fire is undetermined. The investigator cannot eliminate the careless disregard of smoking material into the trashcan as a possible cause of the fire." Waite Rpt. 9 (Pl.'s Resp. Br. ex. 4). State Farm did not question Thomas about the fire until after this litigation began. Therefore, her deposition testimony regarding the cause of the fire is not material to State Farm's defense of noncompliance.

Waite's report was followed by a request from State Farm that Gordon appear for an EUO and bring with him documents relating to Vertex's ownership and management structure; business and financial records; a list of all properties owned or managed by Vertex; and various other documentation relating to Vertex and the Property. Letter of Aug. 18, 2009 (Def.'s Mot. ex. D). Gordon appeared on September 21, 2009, as requested. Gordon answered every question asked, including those regarding Vertex's financial state and Gordon's personal financial situation. State Farm requested at the EUO that Gordon produce additional documentation, and Gordon agreed to do so. State Farm did not give Gordon a deadline. EUO 144–48. Shortly after the EUO, State Farm sent Gordon a letter memorializing its request and again requesting the documents. Letter of Sept. 25, 2009 (Def.'s Mot. ex. F). It again did not give Gordon a deadline or warn him of the consequences of not submitting the documents.

To date, Gordon has not provided all of the requested documents. Albee dep. 20–21. Specifically, he has not produced: 1) personal income tax returns for 2007 and 2008; 2) financial statements and/or tax returns for Vertex from 2007 and 2008; 3) monthly statements for Vertex's checking account with Chase Bank for all of 2008 and the first six months of 2009, as well as verification of the payments Gordon made to Charmaine Hill and Michelle Washington for their ownership interest in Vertex; and 4) a copy of documentation regarding Gordon's purchase of personal residential property in Texas or documentation showing that he was in the process of purchasing the property. Albee Aff. ¶ 19.

On January 8, 2010, State Farm formally denied all insurance liability on the grounds that Vertex violated the concealment and anti-fraud provisions of the Policy and because it failed to comply with the Policy's duties-after-loss provision.

This lawsuit for breach of contract followed.[1]

---

1. Although the complaint originally asserted numerous causes of action, a stipulated order

of partial dismissal has reduced the action to one count of breach of contract and one count

## DISCUSSION

### I. *Legal Standards*

State Farm moves for summary judgment on its defense that Vertex's failure to comply with the Policy's pre-suit requirements bars this action. "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir.2010) (citation and internal quotation marks omitted); *see* Fed.R.Civ.P. 56(a).

■ "Under the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir.2007). Since Vertex asserts claims solely under Michigan law, the Court must apply Michigan substantive law.

### II. *Analysis*

The Policy states the following:

**Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.

Policy, Section I–Conditions ¶ 8 (Def.'s Mot. ex. A).

■ One such policy provision states as follows:

**Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

d. as often as we *reasonably* require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examinations under oath and subscribe to the same;

*Id.* ¶ 2 (emphasis added). Contract terms that require the insured to provide documentary information or submit to examinations under oath are enforceable as a matter of contract law. *Thomson v. State Farm Ins. Co.*, 232 Mich.App. 38, 44–45, 592 N.W.2d 82 (1998) (discussing *Yeo v. State Farm Ins. Co.*, 219 Mich.App. 254, 555 N.W.2d 893 (1996)); *see also Yaldo v. Allstate Prop. & Cas. Ins. Co.*, 641 F.Supp.2d 644, 654 (E.D.Mich.2009) (Murphy, J.) (holding that requiring an insured to submit to an EUO violates neither Michigan law nor the Due Process Clause of the Fourteenth Amendment).

■ State Farm contends that Vertex's action is legally barred because there is no genuine dispute that Vertex failed to comply with the "Duties After Loss" provision before bringing this action. According to State Farm, Vertex failed to provide the "records and documents" State Farm requested that would allow it to make a determination regarding coverage. Vertex responds that there is at least a question of fact as to whether State Farm's requests were reasonable, which they must be. Vertex alternatively contends that even if State Farm's requests were reasonable as a matter of law, a question of fact remains as to whether Vertex substantially performed its duties under the Policy.

#### A. *State Farm's Requests Were Reasonable*

State Farm's requests were reasonable as a matter of law. The claim adjuster initially believed "suspicious circum-

---

of penalty interest under Mich. Comp. Laws § 500.2006.

stances" surrounded the fire at the Property. Yet at the adjuster's deposition in this action, the adjuster could not articulate any basis for believing that the fire was started intentionally, or even that it had a human origin:

Q: Is there anything that you have reviewed to indicate that this was an arson fire?

A: I have no documentation to indicate that.

. . .

Q: What were the suspicious circumstances of this fire?

A: I can't really answer that question right now, because I don't know. I mean, yes, there were questions involved, but most of them came to light after we involved our attorneys.

. . .

Q: So I'm asking you what were the suspicious circumstances of the fire. And you are telling me that as you sit here today, you can't answer that question?

A: That is a correct response.

Q: But you were able to state that in a sworn affidavit on February 8?

A: As I read through this affidavit and signed it, correct. You know, you are asking me what is [a] suspicious circumstance. I can't give you a specific answer right now, because I do not recall.

. . . .

Q: So I'm asking you what the suspicious circumstances are, and you are saying you don't know?

A: I would think, yes, that is correct. Albee dep. 29–31. Moreover, State Farm's fire expert was unable to determine the cause of the fire, stating only that he could not exclude the "careless disregard of smoking material into the trashcan as a possible cause of the fire." Waite Rpt. 9.

██ Even though the claim adjuster was unable to articulate a factual basis for his opinion prior to this lawsuit that the circumstances surrounding the fire and resulting insurance claim were suspicious, State Farm nevertheless had a valid basis for suspicion. Direct proof of arson is rarely available, and arson must usually be proved through circumstantial evidence. *See People v. Horowitz*, 37 Mich.App. 151, 154, 194 N.W.2d 375 (1971) ("It is the nature of the offense of arson that it is usually committed surreptitiously. Rare is the occasion when eyewitnesses will be available. By necessity, proofs will normally be circumstantial."); *see also People v. Porter*, 269 Mich. 284, 292, 257 N.W. 705 (1934) ("The crime of arson is so peculiarly one of secrecy that often the only evidence of the unlawful character of the fire is found in the acts and admissions of a person having opportunity and motive."). Specifically, as the Michigan Supreme Court has stated, evidence of fluctuation in one's financial circumstances is relevant and admissible to demonstrate motive to commit arson on an insured property. *See Smith v. Mich. Basic Property Ins. Ass'n*, 441 Mich. 181, 194–95, 490 N.W.2d 864 (1992).

Here, the following information before State Farm made its review of Gordon and Vertex's financial information material and its requests reasonable:

- Suspicious circumstances of the cause and origin of the fire, particularly that Waite was unable to exclude possibility that someone had deposited a burning substance into the trashcan.

- A previous claim for insurance proceeds by Vertex related to a fire at another property it owned in Detroit. EUO 88–89.

- Numerous insurance claims made by Gordon's brother, William (28 insurance claims); Gordon's wife, Angela, or her company—Victory Consultants (ten claims); and his daughter Char-

maine (five claims between October 2008 and May 2009). Def.'s Reply Br. exs. F–H. These individuals are all associated with Mark Gordon or Vertex. William Gordon was a former owner of Gordon's International Management Company, the predecessor company to Vertex. EUO 45–46. Charmaine Hill was a former owner of Vertex before Mark Gordon bought her ownership interest. *Id.* at 33–34. Angela and Mark Gordon are co-owners of Victory Consultants. *Id.* at 50.[2]

- Gordon's testimony regarding Vertex's recent decrease in the number of sales of property due to declines in the housing market, as well as his large amount of monthly expenditures and/or financial obligations at the time of the fire, including the construction of a home in Texas for $540,000. EUO 39, 53–57.

- The large difference between the last recorded sale price of the Property ($8,500) and Vertex's insurance claim to cover the cost of repair ($119,983.49). Def.'s Mot. ex. N; Def.'s Reply Br. exs. B and C.

Given these circumstances, State Farm's requests for documentation relating to the finances of Vertex and Gordon were reasonable. The documents would potentially shed light on potential motivations Gordon might have to set fire to the Property or inflate his insurance claims. Vertex's tax returns and financial information for 2007 and 2008 would reveal if the company was in fact recording million dollar profits, as Gordon claims, despite a decline in the housing market. Gordon's personal tax returns would indicate if he was personally receiving any of Vertex's claimed profits. Documents regarding Gordon's new home in Texas would also bear on his financial circumstances. This information would create a fuller picture than the one painted solely by Gordon's answers at his EUO and the documents he had already provided to State Farm.[3]

A lack of direct evidence of arson does not preclude the real possibility that arson was the cause of the fire. State Farm has a contractual right to investigate further by requesting Gordon's and Vertex's financial documentation. *Cf. Musleh v. State Farm Fire & Cas. Co.*, No. 10–11344, 2010 WL 11205733, at *3 (E.D.Mich. Dec. 13, 2010) (finding financial documents and tax returns to be relevant in determining whether the insured had a motivation to commit arson and later make a fraudulent insurance claim) (Cleland, J.). Accordingly, State Farm's requests were reasonable.

**B. *Vertex Did Not Substantially Perform its Duties Under the Insurance Policy***

 Vertex contends that even if State Farm's requests were reasonable, this action is not barred contractually because

---

2. These facts invoke the application of the so-called "doctrine of chances" or "doctrine of objective improbability." *See People v. Mardlin,* 487 Mich. 609, 616, 790 N.W.2d 607 (2010). "Under this theory, as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes." *Id.* And "[i]f a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance." *Id.* at 617, 790 N.W.2d 607.

3. Counsel indicated at the hearing that the tax returns exist. Since Gordon agreed at the EUO to produce the other documents, the Court presumes they exist as well, and that Gordon has the ability to produce them. Gordon has never indicated otherwise.

Vertex substantially complied with its duties under the Policy. Specifically, as required by the Policy, Gordon made the property available for inspection, provided State Farm with most of the records and documents requested, and submitted to an EUO as a representative for Vertex.

■ Under Michigan law, a deviation from the absolute terms of a contract is not sufficient to constitute a failure of performance. *See Gibson v. Group Ins. Co.,* 142 Mich.App. 271, 275–76, 369 N.W.2d 484 (1985) (per curiam).

A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract.

Generally speaking, deviations from the absolute terms of a contract do not necessarily cause a failure of performance, but may entitle a party to extra compensation or damages. Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance. On the other hand, where the deviations or alterations are such as would essentially change the terms of performance, they will be considered as a failure of performance.

*Id.* (quoting 6A Michigan Law & Practice, Contracts, § 314, pp. 315–316 (footnotes omitted)).

Gordon's appearance at an EUO and his production of other documentation do not demonstrate substantial performance under the contract. As one judge in this District has indicated, tax returns for the years surrounding the event giving rise to an insurance claim "would appear to represent a minimally necessary core of information upon which [and insurer] could take the next step in its investigation of a possible motive to commit fraud." *Musleh,* 2010 WL 11205733, at *3. The judge concluded there that although the insureds had produced voluminous materials for the insurer's review, they were contractually obligated to produce *all* documents reasonably requested, and that substantial performance of the contract required them to cooperate with a reasonable investigation, for which the tax returns were necessary. *Id.* at 7. The Court agrees. Even viewing the evidence in the light most favorable to Vertex, a jury could not find that Vertex substantially complied with the policy's requirement that it provide the documents and records material to State Farm's request.

The action must be dismissed because Vertex failed to satisfy a condition precedent to bringing an action on the Policy: compliance with *all* Policy provisions. *See Thomson,* 232 Mich.App. at 45, 592 N.W.2d 82.

### C. *Dismissal Will be Without Prejudice*

■■ The question now is whether the dismissal should be with or without prejudice. Generally, "the failure to comply with such a condition [precedent] is not an absolute bar to recovery, but acts to suspend the right to recovery until the [condition is fulfilled]." *Yeo,* 219 Mich.App. at 258, 555 N.W.2d 893. *Yeo* suggested, however, that an insured's "flat refusal" to submit to an EUO—an enforceable condition precedent to bringing an action on a policy—might justify a dismissal *with* prejudice, but declined to reach the issue because it found that the refusal was not willful. *Id.* at 259, 555 N.W.2d 893.

■ The Michigan Court of Appeals addressed the issue again in *Thomson,* where it held that a dismissal must be with prejudice if the noncompliance with a condition precedent is willful. Otherwise, the dis-

missal must be without prejudice. 232 Mich.App. at 45, 592 N.W.2d 82. The court also set forth the definition of willful noncompliance. After surveying decisions from other state and federal courts applying state law, the court concluded that willful noncompliance refers to "a failure or refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a *deliberate* effort to withhold material information or a *pattern of noncooperation* with the insurer." *Id.* at 50, 592 N.W.2d 82. The court also announced its prediction that, in the case of an insured that refuses to submit to an EUO, the burden to demonstrate that the noncompliance was *not* willful would generally fall to the insured, and would be a heavy burden to carry. *Id.* at 51, 592 N.W.2d 82; *see id.* at 52, 592 N.W.2d 82 ("Following our decision in this matter, it will be the rare case indeed in which a claim by an insured that its refusal to submit to an EUO did not amount to wilful noncompliance is upheld."); *see also id.* at 51 n. 8, 592 N.W.2d 82 ("[W]e do not purport to adopt a rule, but, rather, to enunciate with some clarity the legal principles inherent in our holding in this case."). This is because, as a practical matter, the only way an insurer could meet its burden to show willfulness would be by using the insured's responses to questions posed at an EUO. *Id.* at 51, 592 N.W.2d 82. The implication, then, is that in cases where the insured has submit to an EUO, at which an insurer had an opportunity to gather evidence regarding the insured's mental state relative to compliance, the burden of demonstrating willful noncompliance would rest with the insurer. *See Musleh v. State Farm Fire & Cas. Co.,* No. 10–11344, 2011 WL 34975, at *3 (E.D.Mich. Jan. 5, 2011) (Cleland, J.) (on

reconsideration) (noting that the language in *Thomson* giving the insured the burden to demonstrate that noncompliance was not willful "is directed to the clear case of outright refusal to submit to an EUO" and not a failure to submit requested documentation). Because Gordon submitted to an EUO and never refused to submit to another one, State Farm has the burden to demonstrate willful noncompliance.[4]

State Farm has not demonstrated a triable issue as to whether Vertex either deliberately withheld material information or exhibited a pattern of non-cooperation with State Farm's investigation. Vertex, through Gordon, provided to State Farm much of the information requested. At the hearing, counsel for State Farm even stated that Gordon assisted in tracking down phone numbers and addresses of potential witnesses. Gordon also submit to an EUO without incident. He answered every question asked and never interposed a claim of Fifth Amendment privilege. Furthermore, during the EUO, he agreed to produce every document requested by State Farm's examiner. EUO 144–49. State Farm never gave Gordon a deadline to produce the documents, or warned that a failure to provide them would forever bar his claim. When State Farm requested the remaining documents after Gordon's EUO, it again never provided Gordon with a deadline or warned him of the consequences of noncompliance. There is no indication that State Farm followed up even once, through written correspondence or otherwise, regarding the outstanding information. Given State Farm's belief that the financial documentation was an important part of its investigation, it should have followed up with Gordon at least once before denying his claim. While an insurance company has no duty to con-

---

4. State Farm did not reply to Vertex's argument that State Farm has the burden to demonstrate willful noncompliance because Gordon never refused to submit to an EUO.

tinually hound an insured for information the insured has a duty to produce, it does have a duty to work reasonably with the insured to complete its investigation.

Gordon perhaps could have been more diligent, but his lack of diligence in providing the documents demonstrates neither a deliberate effort to withhold material information nor a pattern of non-cooperation, given his cooperation with all of State Farm's other requests during the claim investigation, including submitting to an EUO. Gordon's actions cannot support a finding of willful noncompliance. The dismissal must be without prejudice.

This case is not like *Allen v. Mich. Prop. Ins. Co.*, 249 Mich.App. 66, 640 N.W.2d 903 (2001) (per curiam), cited by State Farm, where the Michigan Court of Appeals affirmed dismissal of the plaintiff's action with prejudice for its willful noncompliance. In *Allen*, the insured refused to submit to any of the three EUOs the insurer scheduled, and failed to provide *any* of the documents requested. *Id.* at 67–68, 640 N.W.2d 903. The insured advised that she was asserting her Fifth Amendment right in refusing to comply with the requests. *Id.* at 73, 640 N.W.2d 903. As the court recognized, though an insured has a Fifth Amendment right not to comply with the requests, she does so at the peril of her insurance claim. *Id.* at 74–75, 640 N.W.2d 903. The insured's refusal was definite and unwavering. "Under these circumstances," the court held, "plaintiff's refusals to submit to an examination under oath and to provide documents requested by defendant were part of a deliberate effort to withhold material information or a pattern of noncooperation with defendant." *Id.* at 75, 640 N.W.2d 903. This case is different because here there was never a definite and unwavering refusal to provide the requested documents. Rather,

Gordon *voluntarily agreed* at the EUO to provide them, but then failed to do so before State Farm denied the claim. Gordon's failure to provide them before the claim was denied can hardly be deemed willful noncompliance.

■ One last point is worth briefly mentioning. Counsel for Vertex indicated at the hearing on the motion that a dismissal without prejudice would, in practical effect, be a dismissal *with* prejudice, because a second action would be time-barred. Not so, as the Michigan Court of Appeals demonstrated in *Yeo v. State Farm Fire & Cas. Ins. Co.*, 242 Mich.App. 483, 618 N.W.2d 916 (2000) [hereinafter *Yeo II*].[5] After a different panel dismissed the plaintiff's lawsuit without prejudice because the plaintiff failed to appear for the scheduled EUO, the plaintiff duly submitted to an EUO, and the defendant later denied the claim. *Id.* at 484–85, 618 N.W.2d 916. The plaintiff waited two years to re-file, leading the court to find the action time-barred. In reaching that holding, the court indicated that the policy's limitations period was tolled during the first action's pendency, but began to run again once the first action was dismissed without prejudice. *Id.* at 484, 618 N.W.2d 916 (citing Mich. Comp. Laws § 600.5856 *and Sherrell v. Bugaski*, 169 Mich.App. 10, 17, 425 N.W.2d 707 (1988)). It ran until the plaintiff submit to an EUO, at which time it tolled and remained tolled until the insurer denied liability. At that point, the period began to run again. *Id.* at 484–85, 618 N.W.2d 916. The remaining portion of the period expired at some point during the two years before the plaintiff re-filed, barring the action.

The analysis in *Yeo II* applies here. The Policy's one-year limitations period

---

**5.** *Yeo II* involved the same insurance dispute at issue in *Yeo v. State Farm Ins. Co.*, 219

Mich.App. 254, 555 N.W.2d 893 (1996), discussed above.

began to run on June 21, 2009, the date of the fire. The period tolled[6] one month later, on July 20, 2009, when Vertex notified State Farm of the loss, leaving eleven months in the period. The period started running again on January 8, 2010, when State Farm formally denied liability. Tolling started again on June 4, 2010, when Vertex filed suit in state court, *see* Mich. Comp. Laws § 600.5856(a) ("The statutes *of limitations or repose are tolled* . . . [a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules."),[7] and it will continue until the Court dismisses this action without prejudice. At that point, approximately seven months will remain in the period, since only four of the remaining eleven months expired between denial of the claim and filing of the lawsuit. *See Sherrell,* 169 Mich.App. at 17, 425 N.W.2d 707 (noting that statute "permits the tolling of the statute of limitations during the pendency of a prior suit between the parties where the prior action was not adjudicated on the merits."). As in *Yeo II,* tolling will begin again when Vertex submits the outstanding documents to State Farm, and will continue until State Farm formally denies liability, if it decides to. *Yeo II,* 242 Mich.App. at 484–85, 618 N.W.2d 916 ("Nothing prevented plaintiff from thereafter submitting to the requisite examination under oath. . . ."). Assuming State Farm again denies the claim (and assuming Vertex submits the necessary documents immediately upon dismissal of this action), Vertex will then have seven months to refile this action. Thus, the Policy's limitations provision poses no problem for Vertex when the Court dismisses the action without prejudice; only if Vertex delays

re-filing for seven months will the limitations provision pose a problem. And in that case, it will be Vertex's delay, not the Court's dismissal, that will cause the time problem.

### CONCLUSION AND ORDER

State Farm's requests for Gordon's and Vertex's financial documents were reasonable, and Gordon did not substantially perform his obligations under the Policy despite producing other requested documents and submitting to an EUO. His noncompliance was not willful, however, and therefore suspends, rather than bars, his right to recovery. He must produce the requested documents before he may sue State Farm on the Policy.

**WHEREFORE,** it is hereby **ORDERED** that State Farm's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**

---

6. Although State Farm's policy does not contain a tolling provision, the law implies one. *See Randolph v. State Farm Fire & Cas. Co.,* 229 Mich.App. 102, 105–07, 580 N.W.2d 903 (1998); Mich. Comp. Laws § 500.2833(1)(q).

7. State Farm was served within 90 days from filing, as required by Mich. Ct. R. 2.102(D).