*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

FOR PUBLICATION
December 1, 2022

v

No. 353052
St. Clair Circuit Court
LC No. 19-002078-FH

LANTZ HOWARD WASHINGTON,

        Defendant-Appellant.

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

MARKEY, J. (*dissenting*).

I would affirm defendant's jury-trial conviction of possession or use of body armor by a violent felon, MCL 750.227g. Accordingly, I respectfully dissent.

## I. FACTUAL BACKGROUND

Defendant crossed the Blue Water Bridge from Port Huron, Michigan, into Canada without paying the required toll. The toll booth agent on duty at the time saw red clothing in the cabin of defendant's vehicle, which was a Ford pickup truck. While the gate was still open at the toll station for a van directly in front of defendant's truck, defendant raced forward and proceeded through the open gate. The toll booth agent immediately contacted her supervisor and reported the incident.

Several Canadian authorities quickly pursued defendant's truck. Officer Matt Lavers of the Canada Border Services Agency stopped and apprehended defendant. Officer Lavers observed and reported that defendant was wearing body armor in the form of a bulletproof vest under a red shirt. Officer Lavers then returned defendant to the American side of the bridge.

Officer Lavers turned defendant, his truck, and the bulletproof vest over to United States Customs and Border Protection Officer Paul Stockwell. Officer Lavers did not testify at trial. The focus of this appeal is on the following testimony by Officer Stockwell regarding his interactions with Officer Lavers:

> [*The Prosecutor*]:    At some point did Officer Lavers from the Canadian services hand you any other evidence?

| | |
|---|---|
| *Officer Stockwell*: | Yes, he did. |
| [*The Prosecutor*]: | What did he hand you? |

* * *

| | |
|---|---|
| *Officer Stockwell*: | A body armor. |

* * *

| | |
|---|---|
| [*The Prosecutor*]: | Now, without saying anything about what was said, the only question I have for you is were there communications between you and Officer Lavers? |
| *Officer Stockwell*: | There were. |
| [*The Prosecutor*]: | Okay. And . . . based on those communications you took custody of [defendant]? |
| *Officer Stockwell*: | Yes, we did. |
| [*The Prosecutor*]: | And you took possession of the body armor that was turned over at the same time? |
| *Officer Stockwell*: | Yes, sir. |

On cross-examination, Officer Stockwell acknowledged that defendant was not wearing the bulletproof vest when he took custody of defendant, that he never saw defendant wearing the body armor, that he did not witness the bulletproof vest being removed from defendant's person or possession, and that he had no direct personal knowledge that defendant had ever worn or possessed the vest.

Officer Stockwell transferred custody of defendant to Port Huron Police Officer Kyle Whitten. Officer Whitten then took defendant to the St. Clair County Jail. Officer Whitten testified that while at the jail, he "overheard the Defendant say that he was wearing the body armor because he was afraid people were going to kill him." Officer Whitten stated that he did not interview or interrogate defendant. Like Officer Stockwell, Officer Whitten conceded on cross-examination that he did not have any personal knowledge that defendant had worn or possessed the body armor.

Port Huron Police Officer Ernesto Fantin testified about a jailhouse recording of a phone call from defendant to his mother in which defendant confessed that "James" had given him the bulletproof vest and that he was wearing it when stopped by police because people were threatening his life. The trial transcript contains a verbatim reproduction of the phone conversation. Defendant took the stand in his own defense, and he testified that he did not make the statement attributed to him by Officer Whitten. Defendant otherwise indicated that he could not recall or remember whether he possessed or wore the bulletproof vest.

Defendant was charged with one count of possession or use of body armor by a violent felon[1] and one count of operating a vehicle with a suspended license, second offense, MCL 257.904. A nolle prosequi was entered with respect to the suspended-license charge. On the morning of the jury trial, defendant moved in limine to exclude evidence of the recorded jail phone call and evidence of the bulletproof vest. With respect to the bulletproof vest, defense counsel maintained that the only way the prosecution could establish an evidentiary foundation or the chain-of-custody relative to the bulletproof vest was through testimony that would violate the Confrontation Clause because Officer Lavers would not be testifying. The trial court denied the motion, but it precluded the prosecutor from eliciting testimony about any statements made by Officer Lavers, which, as indicated earlier, the prosecutor honored when examining Officer Stockwell. The jury found defendant guilty of possession or use of body armor by a violent felon. The trial court sentenced defendant to a year in jail. The court denied defendant's motion to vacate his conviction or grant a new trial. This appeal followed.

## II. ANALYSIS

### A. DEFENDANT'S APPELLATE ARGUMENTS

Defendant argues that the prosecution violated his Sixth Amendment confrontation rights when it introduced implied testimonial hearsay statements by Officer Lavers through the testimony of Officer Stockwell. Defendant contends that the plain inference arising from Officer Stockwell's testimony was that Officer Lavers had informed Officer Stockwell that defendant was caught in possession of or using the body armor. Defendant argues that the implied hearsay was offered for the truth of the matter asserted, that defendant had no opportunity to cross-examine Officer Lavers at a prior hearing, that the prosecution cannot demonstrate that the Confrontation Clause violation was harmless beyond a reasonable doubt, and that to the extent that defense counsel failed to properly preserve the issue, his performance was deficient and prejudicial. With regard to his analysis of why the purported error was not harmless, defendant maintains that without the challenged testimony implicitly showing that defendant had worn or possessed the bulletproof vest, the only evidence demonstrating that defendant did so were his confessions in front of Officer Whitten and to his mother, which would not suffice for conviction under the *corpus delicti* rule.

### B. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). And this Court reviews de novo the issue whether a defendant was denied his or her constitutional right to confront a complaining witness. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

---

[1] There was no dispute that defendant was properly characterized as a "violent felon" for purposes of the charged offense. A stipulation was entered recognizing defendant as a violent felon, and the jury was so instructed.

## C. CONFRONTATION CLAUSE PRINCIPLES

Under the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. Similarly, under the Michigan Constitution, "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" Const 1963, art 1, § 20. The Confrontation Clause bars the admission of out-of-court testimonial statements unless the declarant was unavailable to testify at trial and the defendant had a prior opportunity for cross-examination. *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). "[T]he Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Chambers*, 277 Mich App at 10-11. In *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012), our Supreme Court explained:

> The Confrontation Clause is "primarily a functional right" in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials. Functioning in this manner, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.

> The specific protections the Confrontation Clause provides apply only to statements used as substantive evidence. In particular, one of the core protections of the Confrontation Clause concerns hearsay evidence that is "testimonial" in nature. The United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause; thus, out-of-court testimonial statements are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant. [Quotation marks and citation omitted.]

A statement is testimonial in nature when it was produced with the primary purpose of establishing or proving past events that were potentially relevant to a later criminal prosecution. *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). Statements made by witnesses during interrogations by law enforcement officers are generally testimonial in nature because they are directed at establishing the facts of a past event in order to identify or provide evidence to convict the perpetrator. *Id.* at 826. A statement is testimonial in nature when made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for later use at trial. *Crawford*, 541 US at 52.

## D. DISCUSSION

In *People v Jones*, 228 Mich App 191, 207; 579 NW2d 82 (1998), this Court addressed the issue of "implied assertions" and observed:

> While a number of decisions over the years have regarded "implied" assertions as hearsay, we believe that the theory had a questionable origin, that it

has never achieved general recognition in decided cases, that it is expressly negated by the modern rules of evidence, and that it is contrary to Michigan precedent.

After an exhaustive review of federal and Michigan caselaw, the *Jones* panel concluded its opinion by stating that "under the rule definition of hearsay, an 'implied assertion' is a contradiction in terms and a euphemism for declining to apply the rules as they are written." *Id.* at 225-226. Indeed, the rules of evidence make clear that "hearsay" refers to a "statement," MRE 801(c), in the form of "an oral or written assertion," MRE 801(a). This Court recently reaffirmed that "Michigan does not recognize the 'implied assertion' theory that has been adopted in some other jurisdictions." *People v Propp (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 343255); slip op at 8. In my view, we are bound by this precedent under MCR 7.215(J)(1) even if the federal cases the majority cites are viewed as being persuasive.

Proceeding on the *assumption* that the prosecutor effectively introduced an oral statement by Officer Lavers that potentially triggered protection under the Confrontation Clause, I cannot conclude that the assertion was "testimonial in nature." Consequently, there was no confrontation infringement. If the implication or implied statement was that defendant had possessed or used the bulletproof vest, the statement was not produced *at the time it was made* for the primary purpose to establish or prove past events and to use it as evidence in a criminal prosecution in an effort to convict defendant at a later trial. *Davis*, 547 US at 822, 826. Rather, the purpose of the communication was simply to provide Officer Stockwell with the information necessary for Officer Stockwell to formally take defendant into custody from Canadian authorities and proceed with the charging process under Michigan law. The implied statement explained Officer Stockwell's actions and his involvement in the case, including taking control of the bulletproof vest.

Finally, even if Officer Stockwell's challenged testimony should not have been admitted, the Confrontation Clause violation or error was harmless beyond a reasonable doubt given the evidence of defendant's admissions that he was wearing the body armor. See *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (applying the harmless-beyond-a-reasonable-doubt standard to a Confrontation Clause error). The majority relies on the *corpus delicti* rule to conclude that the prosecution fails to demonstrate that any error was harmless beyond a reasonable doubt. "[T]he corpus delicti of a crime must be established by evidence independent of an accused's confession[,]" but "[t]his rule is limited . . . to admissions which are confessions, and not to admissions of fact which do not amount to confessions of guilt." *People v Rockwell*, 188 Mich App 405, 407; 470 NW2d 673 (1991). I would hold that defendant's statements that he put on the bulletproof vest constituted admissions of fact, but they did not amount to confessions of guilt to the charged crime.

In *People v Porter*, 269 Mich 284, 290; 257 NW 705 (1934), our Supreme Court discussed the differences between true confessions of guilt, which can implicate the *corpus delicti* rule, and mere admissions of fact that do not implicate the rule:

> Defendant does not distinguish between confessions and admissions of fact. If the fact admitted necessarily amounts to a confession of guilt, it is a confession. If, however, the fact admitted does not of itself show guilt, but needs proof of other

facts, which are not admitted by the accused, in order to show guilt, it is not a confession, but an admission, and, therefore, is not within the range of cases cited.

A confession involves a direct acknowledgment of guilt or an acknowledgment of the truth of the crime for which a defendant has been charged, as distinguished from acts, admissions, and exculpatory statements. *Id.* An oral admission of an inculpatory fact from which a juror may infer guilt is not a confession if it falls short of being an acknowledgment of guilt. *Id.* at 291. And the admission to one of the essential elements of a criminal offense, but not all of the elements, does not constitute a confession. *Id.* A mere admission, which needs other facts to support a conviction, is not a confession and is admissible on the *corpus delicti. Id.*; see also *People v Schumacher*, 276 Mich App 165, 181; 740 NW2d 534 (2007) (if a defendant does not admit facts that are necessary to establish guilt, there is no confession).

I cannot conclude that defendant's admission to his mother and his admission overheard by Officer Whitten constituted direct acknowledgements of guilt to the offense of possession or use of body armor by a violent felon. I first note that with respect to the essential element of being a violent felon, defendant's statements did not reveal a concession or admission that he was a violent felon. See MCL 750.227g. Regardless, it is clear that defendant's statements were not intended to be confessions to the charged offense. Rather, defendant's statements plainly reflected expressions of or attempts at exculpation, at least in his mind. Although he admitted wearing the bulletproof vest, he claimed that he did so out of fear for his life based on death threats. Defendant's statements indicated that he was simply trying to protect or defend himself and acting out of duress and fear. These were not confessions of guilt to a crime.

In *Smith v United States*, 348 US 147, 152-153; 75 S Ct 194; 99 L Ed 192 (1954), the United States Supreme Court addressed the *corpus delicti* rule and its purposes, observing as follows:

> The general rule that an accused may not be convicted on his own uncorroborated confession has previously been recognized by this Court, and has been consistently applied in the lower federal courts and in the overwhelming majority of state courts. Its purpose is to prevent errors in convictions based upon untrue confessions alone; its foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be involuntary within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made. [Citations and quotation marks omitted.]

-6-

In this case, defendant's statements were not made to the police during interrogation, did not appear to be involuntary or made as a result of coercion, inducement, strain, or confusion, and were made under circumstances suggesting that they were true. Again, defendant here was giving perceived excuses for his conduct, and the statements were made to his mother on the phone and simply overheard in the other circumstance. I see no reason to invoke the *corpus delicti* rule to bar consideration of the admissions and reverse the conviction considering the purposes of the rule. And if the admissions were admissible and subject to consideration by the jury, the presumed error in admitting Officer Stockwell's testimony about Officer Lavers' implied assertions was most certainly harmless beyond a reasonable doubt.

In sum, I would affirm defendant's jury-trial conviction of possession or use of body armor by a violent felon. Accordingly, I dissent.


/s/ Jane E. Markey