**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v WASHINGTON

Docket No. 165296. Argued March 13, 2024 (Calendar No. 2). Decided July 26, 2024.

Lantz H. Washington was convicted by a jury of being a violent felon in possession of body armor, MCL 750.227g. Defendant drove across the border from Michigan into Canada without paying the toll, and he was arrested by a Canadian customs agent, Officer Matthew Lavers, and returned to the American side of the bridge. An American customs agent, Officer Paul Stockwell, took custody of defendant and a bulletproof vest. The Canadian government did not allow Lavers to testify at trial. Defendant filed a motion in limine to exclude evidence of the bulletproof vest on the grounds that it could not be introduced in the absence of testimony from Lavers without violating the Confrontation Clause, US Const, Am VI; Const 1963, art 1, § 20. The trial court, Elwood L. Brown, J., denied the motion but barred the prosecution from eliciting testimony regarding any statements made by Lavers. At trial, Stockwell testified that Lavers had handed him "body armor" when he transferred defendant into United States custody and that, on the basis of "communications" with Lavers, Stockwell had taken defendant into custody and taken possession of the body armor. Port Huron Police Officer Kyle Whitten testified that he overheard defendant "say that he was wearing the body armor because he was afraid people were going to kill him." A recording of a phone call between defendant and his mother was also introduced into evidence, including defendant's statements that he put on the body armor because he was getting threats. Following his conviction, defendant moved to vacate, arguing that Stockwell's testimony implied a testimonial statement made by Lavers, i.e., that defendant had possessed the bulletproof vest, which violated his constitutional right of confrontation because Lavers had not testified. The trial court denied defendant's motion, and the Court of Appeals reversed, concluding that Lavers's out-of-court statement to Stockwell was testimonial and was admitted in violation of the Confrontation Clause. 344 Mich App 318 (2022). The Court of Appeals further concluded that the error was not harmless beyond a reasonable doubt because the only other evidence supporting admission of the bulletproof vest was statements that were admitted in violation of the *corpus delicti* rule. The Court of Appeals reversed and remanded for a new trial. The prosecution's application for leave to appeal in the Michigan Supreme Court was granted. 511 Mich 963 (2023).

In a unanimous opinion by Justice VIVIANO, the Supreme Court *held*:

A defendant's constitutional right of confrontation may be violated when a trial witness's testimony introduces the substance of an unavailable witness's out-of-court statement if the trial

witness's testimony leads to a clear and logical inference that the out-of-court statement was testimonial. In this case, the Court of Appeals correctly held that defendant's right to confront Officer Lavers was violated. The Court of Appeals erred, however, by applying the *corpus delicti* rule to defendant's statements; remand to the Court of Appeals is necessary to determine whether the violation of defendant's right to confrontation was harmless beyond a reasonable doubt when considering defendant's statements.

1. The right of confrontation under the US Const, Am VI and Const 1963, art 1, § 20 ensures that a witness against the defendant testifies under oath at trial, is available for cross-examination, and allows the jury to observe the witness's demeanor. Therefore, under *Crawford v Washington*, 541 US 36 (2004), testimonial statements of witnesses who are absent from trial may be admissible only if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the witness. A statement is "testimonial" if it was made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. The Confrontation Clause only bars testimonial statements that are used as substantive evidence to prove the truth of the matter asserted in the statement.

2. In this case, Lavers's out-of-court statement that defendant possessed the bulletproof vest when Lavers encountered him was testimonial, and Stockwell's testimony that he took custody of defendant and the bulletproof vest "at the same time" based on his communications with Lavers implicitly introduced Lavers's statement. The prosecution argued that whether a statement is testimonial turns on whether, at the time it was made, the statement was solely directed at establishing the facts of a past crime in order to identify the perpetrator. But this Court has rejected the application of this "primary purpose" test outside of an emergency context. Therefore, even if Lavers had some other purpose for saying that defendant possessed the bulletproof vest, this would not change the test under *Crawford* to determine whether his statement was testimonial. The *Crawford* test does not require that Lavers knew his statement would be introduced at a trial for a charge of violent felon in possession of body armor. Rather, the standard requires courts to consider the foreseeability, given the context in which it was made, of whether the statement would later be used at trial. The context in which Lavers made his statement would lead a reasonable person in his position to believe that the statement would be available for use at a later trial, especially considering that it was made to Stockwell, a law enforcement officer.

3. According to the prosecution, even if Lavers's statement was testimonial, it did not implicate the Confrontation Clause because it was not offered for the truth of the matter asserted, i.e., to prove that defendant actually possessed the bulletproof vest. Rather, the prosecution asserted that it was offered only to establish the chain of custody of the vest. But there is no exception to the Confrontation Clause to establish chain of custody. The United States Supreme Court has held that testimony to support chain of custody must, if the defendant objects, be introduced live. Indeed, in order to establish a relevant chain of custody, the prosecution would have to show that Lavers took the vest from defendant before giving it to Stockwell. Thus, regardless of whether the statement was only offered to establish chain of custody, Lavers's statement would need to be offered for the truth of the matter asserted, i.e., that defendant actually possessed the bulletproof vest.

4. The question in this case was whether a defendant's right to confrontation is violated when trial testimony introduces the substance of an out-of-court, testimonial statement made by an unavailable witness. Consistently with federal caselaw, the Confrontation Clause may be violated when a trial witness's testimony introduces the substance of an out-of-court statement by an unavailable witness if the trial witness's testimony leads to a clear and logical inference that the out-of-court statement was testimonial. In such situations, a defendant is not able to cross-examine the veracity of the out-of-court statement and is thus denied their constitutional right to confront the witness. In this case, Stockwell's testimony implied that Lavers told him that defendant possessed body armor when he stated that there were "communications" between himself and Lavers and that he took possession of the body armor based on those communications. This statement was testimonial, and defendant's right to confront his accuser, Lavers, was violated.

5. However, a violation of the Confrontation Clause does not automatically entitle a defendant to relief. The violation is subject to a harmless-error analysis. According to the Court of Appeals, the violation here was not harmless under the *corpus delicti* rule because there was no evidence other than Lavers's out-of-court testimony to support the admission of the bulletproof vest into evidence. The *corpus delicti* rule is well-established and is meant to prevent the use of a defendant's confession to convict the defendant of a crime that did not occur. Specifically, the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury and (2) some criminal agency as the source of the injury. But this Court has long held that the *corpus delicti* rule is confined to confessions. And it has also distinguished between confessions and admissions, such that a defendant's admissions are not subject to the *corpus delicti* rule. In this case, defendant's statement that he possessed the body armor because he was being threatened and was in fear for his life included only one of the two elements of the charged crime: the fact that he possessed body armor. Defendant did not admit that he was a violent felon, which would have been necessary to make his statements a confession. Defendant's statements, therefore, were not barred by the *corpus delicti* rule.

Affirmed in part, reversed in part, and remanded to the Court of Appeals to reconsider whether the Confrontation Clause violation was harmless beyond a reasonable doubt.

Justice WELCH, concurring, joined the Court's opinion in full. She wrote separately to question whether, when a defendant is charged with a crime that is linked to their status as a felon and the defendant stipulated to that status, the defendant's statements should be admissible without the prosecution first offering independent evidence of the *corpus delicti*. However, because the Court was not asked to overrule its precedent, Justice WELCH concurred with the Court's opinion that defendant's statements were not a confession because he did not admit that he was a violent felon, and accordingly, the *corpus delicti* did not need to be established first with independent evidence before the admission of the statement. If the purpose of the *corpus delicti* rule was to protect defendants from having a coerced confession used against them without independent evidence that supports the confession, Justice WELCH questioned how that purpose was accomplished in this case by requiring defendant to admit to his status as a violent felon in addition to his possession of the vest in order to trigger the rule's protection.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 26, 2024

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                  No. 165296

LANTZ HOWARD WASHINGTON,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

The issue in this case is whether a defendant's constitutional right of confrontation may be violated when a trial witness's testimony introduces the substance of an out-of-court statement by an unavailable witness. We hold that it may and that the statement at issue here was admitted in violation of defendant's right of confrontation. However, because the Court of Appeals erred by applying the *corpus delicti* rule to defendant's statements, we remand to that Court to determine whether the violation of defendant's right

to confrontation was harmless beyond a reasonable doubt when considering defendant's own statements.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant drove across the border from Michigan into Canada without paying the toll. A Canadian customs agent, Officer Matthew Lavers, arrested defendant and brought him back to the American side of the bridge. An American customs agent, Officer Paul Stockwell, took custody of defendant and a bulletproof vest. Officer Stockwell transferred custody of defendant to local police, and defendant was taken to jail.

Defendant was charged with being a violent felon in possession of body armor under MCL 750.227g(1), which states that "a person who has been convicted of a violent felony shall not purchase, own, possess, or use body armor."[1] Before trial, the Canadian government indicated that Officer Lavers would not be allowed to testify. Defendant filed a motion in limine to exclude evidence of the bulletproof vest and argued that, because Officer Lavers would not be testifying, the only way the prosecution could establish an evidentiary foundation or the chain of custody for the vest was through testimony that would violate the Confrontation Clause. The trial court denied the motion, but it precluded the prosecutor from eliciting testimony about any statements made by Officer Lavers.

At trial, Officer Stockwell testified that he met Officer Lavers on the American side of the bridge and that defendant was in a police cruiser. He testified further:

---

[1] Defendant was previously convicted of assault with intent to do great bodily harm, MCL 750.84, and of second-degree criminal sexual conduct, MCL 750.520c, both of which qualify as violent felonies. See MCL 750.227g(10)(b) and MCL 791.236(20). A violent felon is only allowed to possess body armor if he petitions for and receives permission from the local police chief or sheriff, MCL 750.227g(2), which defendant did not do here.

*Q.* At some point did Officer Lavers from the Canadian services hand you any other evidence?

*A.* Yes, he did.

*Q.* What did he hand you?

* * *

*A.* A body armor.

* * *

*Q.* Now, without saying anything about what was said, the only question I have for you is were there communications between you and Officer Lavers?

*A.* There were.

*Q.* Okay. And . . . based on those communications you took custody of the Defendant?

*A.* Yes, we did.

*Q.* And you took possession of the body armor that was turned over at the same time?

*A.* Yes, sir.

Officer Stockwell acknowledged that defendant was not wearing the vest when he took defendant into custody and that he had no direct knowledge as to whether defendant ever possessed the vest.

Port Huron Police Officer Kyle Whitten testified that, while defendant was at the jail, he overheard defendant "say that he was wearing the body armor because he was afraid people were going to kill him," but Officer Whitten also acknowledged that he did not have any direct knowledge of whether defendant ever possessed the vest. The recording of a phone call between defendant and his mother was authenticated and admitted. In that call,

3

defendant said that "James gave [him] a bulletproof vest" because defendant was "getting threats," that he had "put on the bulletproof vest," and that he "went to the police with it on. I was [in] fear for my life, they was threatening me."

Defendant testified on his own behalf and denied having made the statement attributed to him by Officer Whitten. Instead, he testified that he simply told the deputies at the jail that he was arrested for possession of body armor. He also testified that when he told his mother that he wore a bulletproof vest, he was referring to an incident a few days earlier when he went to a police station in Idlewild, Michigan. He otherwise claimed that he could not recall or remember whether he possessed or wore the bulletproof vest the day he was arrested. He did, however, stipulate at trial that he had been previously convicted of a violent felony. The jury found defendant guilty of being a violent felon in possession of body armor.

Defendant moved to vacate his conviction, arguing that Officer Stockwell's testimony implied the substance of a testimonial statement made by Officer Lavers, namely that defendant had possessed the bulletproof vest. And because Officer Lavers did not testify, defendant argued that his constitutional right of confrontation was violated. The trial court denied his motion.

The Court of Appeals majority reversed and held that Officer Lavers's out-of-court statement to Officer Stockwell was testimonial and was implicitly admitted without the opportunity for cross-examination, in violation of the Confrontation Clause. *People v Washington*, 344 Mich App 318, 328; 1 NW3d 320 (2022). The Court held further that the error was not harmless beyond a reasonable doubt because the only other evidence supporting admission of the bulletproof vest was statements admitted in violation of the

4

*corpus delicti* rule. *Id*. at 338-339. Accordingly, it vacated defendant's conviction and remanded for a new trial. *Id*. at 339.

This Court then granted the prosecution's application for leave to appeal and directed the parties to address:

> (1) whether evidence directly implying the substance of a testimonial, out-of-court statement made by an unavailable witness and offered to prove its truth, i.e., "implied testimonial hearsay," is inadmissible because it violates the Sixth Amendment of the United States Constitution and Article 1, § 20 of Michigan's Constitution; and, if so, (2) whether the defendant's incriminating statements were inadmissible under the corpus delicti rule. [*People v Washington*, 511 Mich 963, 963 (2023).]

## II. DISCUSSION

The prosecution raises two issues on appeal. First, the prosecution argues that the Court of Appeals erred by holding that the Confrontation Clause is violated when a trial witness testifies in a manner that implies the substance of a statement made by another person outside the courtroom. Second, the prosecution argues that, even if such a violation occurred here, the Court of Appeals erred by applying the *corpus delicti* rule to bar consideration of defendant's own statements when deciding whether the trial court erred by admitting the bulletproof vest into evidence. For the reasons below, we reject the prosecutor's first argument but agree that the *corpus delicti* rule does not apply here.

## A. CONFRONTATION CLAUSE

Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo. *People v Fackelman*, 489 Mich 515, 524; 802 W2d 552 (2011). Under the de novo standard, we review the issue

5

independently without deference to the lower courts. See *People v Barrera*, 451 Mich 261, 268; 547 NW2d 280 (1996).

The Sixth Amendment of the United States Constitution and Article 1, § 20 of Michigan's Constitution provide a defendant with the right to confront the witnesses against him. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (quotation marks and citations omitted). Thus, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A statement is "testimonial" if it was "made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]' " *Fackelman*, 489 Mich at 556, quoting *Crawford*, 541 US at 51-52 (brackets in *Fackelman*).[2] But, even if the statement is testimonial, "the Confrontation Clause applies only to statements used as substantive evidence." *Fackelman*, 489 Mich at 528. "The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 US at 60 n 9. The parties dispute whether Officer Stockwell's

---

[2] See also *Crawford*, 541 US at 51 (" 'Testimony' . . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.") (citation omitted; alteration in original).

testimony violated the Confrontation Clause by implying that certain statements were made by Officer Lavers.[3]

## 1. THE STATEMENT AT ISSUE WAS TESTIMONIAL

"The threshold question for any Confrontation Clause challenge . . . is whether the proffered evidence is testimonial." *People v Bruner*, 501 Mich 220, 227; 912 NW2d 514 (2018). According to defendant, Officer Stockwell's trial testimony that he took custody of defendant "based on [his] communications with Officer Lavers" and took custody of the bulletproof vest "at the same time" implicitly introduced the evidence at issue here: Officer Lavers's out-of-court statement that defendant possessed the bulletproof vest when Officer Lavers encountered him. The prosecution does not seem to dispute that Officer Lavers made such a statement and instead argues that Officer Lavers's statement was not testimonial because his statement was intended only to note that he had performed the "ministerial duty of returning Defendant, a truck, and property to United States Customs and Border Protection officers." To support that argument, the prosecution argues further that whether a statement is "testimonial" turns on whether the statement is " 'solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator' " at the time it was made, quoting *Davis v Washington*, 547 US 813, 826; 126 S Ct 2266; 165 L Ed 2d 224 (2006).[4]

---

[3] It is undisputed that Officer Lavers was unavailable to testify at the trial and that defendant did not have a prior opportunity to cross-examine Officer Lavers.

[4] In a variation of this argument, the prosecution argues that Officer Lavers's statement was not testimonial because "the statement was not produced *at the time it was made* for *the primary purpose* to establish or prove past events and to use it as evidence in a criminal prosecution in an effort to convict defendant at a later trial." *Washington*, 344 Mich App

But this Court has soundly rejected application of the "primary purpose" test outside of an emergency context. In *Fackelman*, we explained that, while *Davis* "employed a primary purpose inquiry to determine whether statements made to the police in the very specific context of an *ongoing emergency* were testimonial, [*Davis*] did not mandate that this was the exclusive test to be applied generally in Confrontation Clause cases." *Fackelman*, 489 Mich at 557-558.[5] Further, we observed that it is "utterly unclear how a court would apply the 'primary purpose' test outside the *Davis* context to a case in which no emergency is alleged—what alternative 'purposes' would be considered, and how would the resolution of which of these is 'primary' bear in any meaningful way on the principles inherent in the Confrontation Clause?" *Id*. at 559. The prosecution has not advanced any argument as to why *Fackelman* might have been wrongly decided or should be overturned, so we apply that precedent here.[6] Thus, even if Officer Lavers had some

at 346-347 (MARKEY, J., dissenting) (second emphasis added), citing *Davis*, 547 US at 822, 826.

[5] Indeed, the language that the prosecution quotes from *Davis* was merely used to describe a certain type of conduct, i.e., interrogation by law enforcement officers, that " 'fall[s] *squarely* within [the] class' " of testimonial hearsay . . . ." *Davis*, 547 US at 826 (citation omitted; emphasis added). Later in the opinion, the Court concluded that the Confrontation Clause applied to statements at issue in the companion case because "the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime . . . ." *Id*. at 830. As we observed in *Fackelman*, nothing in *Davis* replaced the controlling standard in *Crawford* to determine whether a statement is "testimonial" when made outside of an emergency context. See *Fackelman*, 489 Mich at 557-558.

[6] It has been observed that the Supreme Court's fractured decision in *Williams v Illinois*, 567 US 50; 132 S Ct 2221; 183 L Ed 2d 89 (2012), has left "the proper formulation of the primary-purpose test . . . unclear," but, "[a]ll in all, five Supreme Court justices [in *Williams*] rejected the formulation of the primary-purpose test proposed by four justices." *People v Fontenot*, 509 Mich 1073, 1079 (2022) (MCCORMACK, C.J., concurring); see also *Stuart v Alabama*, 586 US ___, ___; 139 S Ct 36, 37; 202 L Ed 2d 414 (2018) (Gorsuch, J., dissenting from the denial of certiorari) ("[W]hile *Williams* yielded no majority opinion,

other purpose for saying that defendant possessed the bulletproof vest, that does not change the test under *Crawford* to determine whether his statement was testimonial.

Again, *Crawford* asks whether the statement was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 US at 52 (quotation marks and citation omitted). That standard does not require that Officer Lavers *knew* that his statement regarding the bulletproof vest would be introduced at a trial for a charge of violent felon in possession of body armor. Rather, the standard requires courts to consider the foreseeability—based on the context at the time the statement was made—of whether the statement would later be used at trial. See *Fackelman*, 489 Mich at 556 (rejecting the dissent's argument that " 'an inquiry into the mere *foreseeability* of a statement's use at trial' " is inconsistent with *Crawford*), quoting *id*. at 582 (YOUNG, C.J., dissenting); *id*. at 560 (observing that "whether a statement is testimonial requires a 'highly context-dependent inquiry' "), quoting *Michigan v Bryant*, 562 US 344, 363; 131 S Ct 1143; 179 L Ed 2d 93 (2011).

We conclude that Officer Lavers's statement was testimonial. The context in which Officer Lavers made his statement would lead a reasonable person in his position to believe the statement would be available for use at a later trial. An important factor is that the statement was made to Officer Stockwell, a law enforcement officer. *Crawford*, 541 US

---

at least five Justices rejected [the plurality's] logic—and for good reason."); see also *United States v Duron-Caldera*, 737 F3d 988, 994 (CA 5, 2013) ("In *Williams*, four Justices, referred to here as the plurality, expressed support for a primary purpose test that would find testimonial only statements 'having the primary purpose of accusing a targeted individual of engaging in criminal conduct.' . . . We decline to adopt the government's proposed 'accusation' test for a number of reasons. First, in *Williams*, five Justices expressly rejected this test.") (citation omitted).

at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.").[7] Another important factor suggesting that a reasonable person in Officer Lavers's position would believe his statement would be available for use at a later trial is that Officer Lavers made the statement while turning custody of defendant over to Officer Stockwell after having arrested defendant for engaging in criminal activity. And, because there was no ongoing emergency, even if Officer Lavers subjectively intended for his statement to be used for a different, non-trial purpose, that does not bear on whether a reasonable person in his position would have foreseen that his statement would be available for use at a later trial. See *Fackelman*, 489 Mich at 558-559. His statement to Officer Stockwell, therefore, was testimonial.

## 2. THE STATEMENT WAS OFFERED AS SUBSTANTIVE EVIDENCE FOR THE TRUTH OF THE MATTER ASSERTED

Next, the prosecution argues in the alternative that, even though Officer Lavers's statement was testimonial, it does not implicate the Confrontation Clause because it was

---

[7] See also *Davis*, 547 US at 826 ("The solemnity of even an oral declaration of relevant past fact to an investigating officer is well enough established by the severe consequences that can attend a deliberate falsehood."); *id*. at 830 n 5 ("It imports sufficient formality, in our view, that lies to such officers are criminal offenses."); *Fisher v Commonwealth*, 620 SW3d 1, 9 & n 48 (Ky, 2021) (applying a "declarant-centric" approach to the question of whether a statement is "testimonial" and observing that "[s]tatements obtained through routine interrogations by police are usually testimonial"); *Davis*, 547 US at 822 n 1 ("Our holding refers to interrogations because, as explained below, the statements in the cases presently before us are the products of interrogations—which in some circumstances tend to generate testimonial responses. This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial. The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.").

10

not offered for the truth of the matter asserted, i.e., to prove that defendant actually possessed the bulletproof vest. See *Fackelman*, 489 Mich at 528. Instead, the prosecution argues that the statement was offered only to establish the chain of custody for the vest.

But the prosecution does not point to a single case establishing the rule that a statement used to support the chain of custody is an exception to the Confrontation Clause, and we have found none. To the contrary, the United States Supreme Court has held that "[i]t is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live." *Melendez-Diaz v Massachusetts*, 557 US 305, 311 n 1; 129 S Ct 2527; 174 L Ed 2d 314 (2009). Indeed, in order to establish any relevant chain of custody, the prosecution would need to show that Officer Lavers *took the vest from defendant* before giving it to Officer Stockwell. See *People v Jennings*, 118 Mich App 318, 322; 324 NW2d 625 (1982) ("In order to obtain the admission of real evidence, a prosecutor must lay a foundation identifying the items as what they are purported to be and displaying that *the items are connected with the accused* or the crime.") (emphasis added). Thus, regardless of whether the statement was offered merely to establish the chain of custody or to establish that defendant possessed the bulletproof vest as an element of the charged offense, the statement would need to be offered for the truth of the matter asserted, i.e., that defendant actually possessed the bulletproof vest.

The prosecution also argues that Officer Stockwell's testimony regarding his communications with Officer Lavers was offered only to explain how defendant and his property came into Officer Stockwell's custody. For support, the prosecution relies on *People v Chambers*, 277 Mich App 1; 742 NW2d 610 (2007). In that case, a detective

testified that an FBI agent advised him that one of the agent's informants had identified the defendant in a still photograph taken from surveillance video. *Id*. at 4. In reliance on that information, the police set up surveillance on the defendant's house and arrested him after he arrived at the house wearing a jacket similar to the one he had worn in the photograph. *Id*. *Chambers* held that "the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted" and that the FBI agent's statement was merely "offered to establish and explain why the detective organized a surveillance of defendant's home and how defendant came to be arrested." *Id*. at 11.

But one of the cases that *Chambers* relied on explains why *Chambers* is not applicable here. In *People v Jackson*, 113 Mich App 620, 624; 318 NW2d 495 (1982), the Court of Appeals held that an out-of-court statement that "an armed robbery was in progress" was not hearsay because it "was not admitted to prove the truth of the matter asserted but to show the reason for the presence of the police officers at the scene." And, thus, admission of the statement did not deny defendant's right of confrontation. *Id*. But in so holding, the *Jackson* Court distinguished *People v Eady*, 409 Mich 356; 294 NW2d 202 (1980), "because, in [*Eady*, a sexual assault case], the content of the [out-of-court statement] *was substantive proof* that the victim had been resisting the defendant's sexual advances prior to the arrival of police at the scene of the alleged criminal sexual conduct." *Jackson*, 113 Mich App at 624 (emphasis added). See also *Eady*, 409 Mich at 361 ("One can accept the prosecutor's contention that this evidence was introduced to demonstrate the basis for the officer's actions in arriving on the scene without agreeing that the substance of the [out-of-court statement] was admissible.").

12

The same is true here—Officer Lavers's statement that defendant possessed the bulletproof vest was substantive proof that he was guilty of being a violent felon in possession of body armor. That makes this case distinguishable from *Chambers*, where the FBI agent's statement that identified the defendant in a photograph was merely introduced to explain why the officers undertook further investigation that led to the discovery of substantive evidence. Moreover, *Chambers* did not address *Eady*, which we find controlling here.[8] Accordingly, reliance on *Chambers* is misplaced.

---

[8] This is not to suggest that admission of every out-of-court, testimonial statement would violate the Confrontation Clause. As explained by the United States Court of Appeals for the Fifth Circuit:

> Testifying officers may provide context for their investigation or explain "background" facts. Such out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions. *These statements often provide necessary context where a defendant challenges the adequacy of an investigation. But absent such claims, there is a questionable need for presenting out-of-court statements because the additional context is often unnecessary, and such statements can be highly prejudicial.* Statements exceeding the limited need to explain an officer's actions can violate the Sixth Amendment—where a nontestifying witness specifically links a defendant to the crime, testimony becomes inadmissible hearsay. [*United States v Kizzee*, 877 F3d 650, 659 (CA 5, 2017) (citations omitted; emphasis added).]

Here, the prosecution does not argue that it elicited Officer Stockwell's testimony regarding his "communications" in response to any attack on the investigation by defendant. Also, as explained above, the prosecution's argument that the testimony was elicited to establish the chain of custody belies its alternate argument here that the statement was not offered to prove defendant possessed the bulletproof vest. Finally, we note that our analysis in this case is consistent with the reasoning in *Smith v Arizona*, 602 US ___; ___ S Ct ___; ___ L Ed 2d ___ (2024); slip op at 13 (brackets in original), where the Supreme Court observed that we "do not 'accept [a State's] nonhearsay label at face value,'" and found a Confrontation Clause violation when a trial witness "became the conduit for" another declarant's out-of-court testimonial statement, *id*. at ___; slip op at 1-2, 5.

### 3. THE CONFRONTATION CLAUSE APPLIES TO AN OUT-OF-COURT STATEMENT THAT WAS INTRODUCED THROUGH TRIAL TESTIMONY

The question, then, is whether a defendant's rights under the Confrontation Clause are violated when trial testimony introduces the substance of an out-of-court, testimonial statement made by an unavailable witness. Though this Court has not addressed the question, the federal courts have consistently answered in the affirmative. See, e.g., *United States v Kizzee*, 877 F3d 650, 657 (CA 5, 2017) ("Where an officer's testimony leads 'to the clear and logical inference that out-of-court declarants believed and said that [the defendant] was guilty of the crime charged,' Confrontation Clause protections are triggered. . . . [A] prosecutor's questioning may introduce a testimonial statement by a nontestifying witness, thus implicating the Confrontation Clause.") (citation omitted; first alteration in original).[9] Courts from other jurisdictions have held the same, see, e.g., *Young v United States*, 63 A3d 1033, 1044 (DC, 2013) (holding it immaterial "whether the statement is quoted verbatim or conveyed only in substance[, or] whether it is relayed explicitly or merely implied"),[10] as have legal scholars, see 2 McCormick, Evidence (8th

---

[9] See also *United States v Meises*, 645 F3d 5, 21 (CA 1, 2011) ("The opportunity to cross-examine the declarant 'to tease out the truth' is no less vital when a witness indirectly, but still unmistakably, recounts a co-defendant's out-of-court accusation.") (citation omitted); *Mason v Scully*, 16 F3d 38, 42-43 (CA 2, 1994) ("To implicate the defendant's confrontation right, the statement need not have accused the defendant explicitly but may contain an accusation that is only implicit."); *United States v Benamor*, 937 F3d 1182, 1189-1190 (CA 9, 2019) (holding that a special agent's statement that his conversation with a witness "confirmed his suspicions" violated the Confrontation Clause because it implied that the defendant possessed a firearm and ammunition).

[10] See also *Dickerson v Commonwealth*, 485 SW3d 310, 323-327 (Ky, 2016) ("Because the detective's testimony, by virtue of its summary nature, also encompassed the out-of-court testimonial hearsay of the other nine or so witnesses he interviewed, it still violated [the defendant's] right to confront those out-of-court witnesses under *Crawford*."); *State v Bankston*, 63 NJ 263, 271; 307 A2d 65 (1973) ("Although in the present case the police

14

ed), § 252 n 68, p 240 ("[T]he Confrontation Clause cannot be circumvented where the content of a testimonial statement is introduced implicitly through the testimony of the law enforcement officer who questioned the defendant."), citing *Kizzee*, 877 F3d at 657-658.

Consistent with that weight of authority, we hold that the Confrontation Clause is violated when a witness's testimony at trial introduces an out-of-court statement of an unavailable witness if the witness's testimony leads to a clear and logical inference that the out-of-court declarant made a testimonial statement.[11] In such a situation, the defendant is not able to cross-examine the veracity of the out-of-court statement, and the defendant is

---

officers never specifically repeated what the informer had told them, the inescapable inference from [an officer's] testimony was that the informer had given information that defendant would have narcotics in his possession.").

[11] The prosecution and the Court of Appeals dissenting judge confuse this type of implied statement with an "implied assertion"; under that theory, the statement would be hearsay, but the implied-assertion theory is not recognized in Michigan. See *People v Jones (On Rehearing After Remand)*, 228 Mich App 191, 207; 579 NW2d 82 (1998) ("While a number of decisions over the years have regarded 'implied' assertions as hearsay, we believe that the theory had a questionable origin, that it has never achieved general recognition in decided cases, that it is expressly negated by the modern rules of evidence, and that it is contrary to Michigan precedent."). And *Jones*, which ultimately held that the evidence questioned in that case was not hearsay, is inapposite for several reasons. First, it addressed only hearsay without considering the Confrontation Clause and is therefore distinguishable. See *Kizzee*, 877 F3d at 656 n 2 ("The Confrontation Clause and hearsay rules are not coextensive, but they do overlap."), citing *Crawford*, 541 US at 51, 53. Moreover, *Jones* involved an actual statement, not one implied by the prosecutor's questioning of the witness who relayed the statement, like in this case. The question in *Jones* was whether the explicit statement contained an "implied assertion" that the declarant was angry, see *Jones*, 228 Mich App at 207, not whether the testimony implied the substance of what someone else had said. Finally, when looking at Officer Lavers's verbal statement in this case, there is little doubt that he intended to make the specific assertion that defendant possessed the bulletproof vest. See Advisory Committee Note to FRE 801(a), 28 USC Appx 801(a) ("It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion.").

15

thereby denied his constitutional right to confront the witness. Perhaps the clearest example of this is found in *Mason*, where the United States Court of Appeals for the Second Circuit held that the following trial testimony violated the defendant's right to confrontation:

> "Q. And, after the lineup . . . was a conversation held with George Rivera? This is a yes or no question.
>
> A. Yes.
>
> Q. And, after this conversation with George Rivera, were you looking for somebody?
>
> A. Yes, I was.
>
> Q. And, who were you looking for?
>
> A. [The defendant,] Terrence Mason." [*Mason*, 16 F3d at 40.]

The implied out-of-court statement was that Rivera said something that identified Mason (the defendant) as the suspect. But Rivera was not available as a witness, so the defendant was unlawfully denied his right to confront Rivera and determine what he actually said.

Here, the testimony of Officer Stockwell similarly implied that Officer Lavers told him that defendant possessed body armor:

> *Q*. Now, without saying anything about what was said, the only question I have for you is *were there communications* between you and Officer Lavers?
>
> *A*. There were.
>
> *Q*. Okay. And . . . *based on those communications* you took custody of the Defendant?
>
> *A*. Yes, we did.
>
> *Q*. And you took possession of the body armor that was turned over at the same time?

*A.* Yes, sir. [Emphasis added.]

The clear and logical inference from Officer Stockwell's testimony is that during their "communications," Officer Lavers made an out-of-court statement regarding his belief that defendant possessed the body armor. As discussed above, that statement was testimonial. We therefore affirm the Court of Appeals holding that defendant's right to confront his accuser, Officer Lavers, was violated.

## B. *CORPUS DELICTI*

A violation of the Confrontation Clause does not automatically entitle defendant to relief; rather, the violation is subject to a harmless-error analysis. *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). The Court of Appeals held that the violation here was not harmless because, under the *corpus delicti* rule, without Officer Lavers's statement, there was no other evidence to support the admission of the bulletproof vest into evidence. We disagree with this conclusion for the reasons below.

A reviewing court examines a trial court's decision regarding application of the *corpus delicti* rule for an abuse of discretion. *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Preliminary questions of law regarding the admissibility of evidence are reviewed de novo on appeal. *People v Small*, 467 Mich 259, 261-262; 650 NW2d 328 (2002).

The purpose of the *corpus delicti* rule is well-established:

The corpus delicti rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur. Specifically, the rule provides that a defendant's confession may not be admitted unless there is

17

> direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury. [*People v Konrad*, 449 Mich 263, 269-270; 536 NW2d 517 (1995).]

However, "[p]roof of the identity of the perpetrator of the act or crime is not a part of the corpus delicti. It is sufficient to show that the crime was committed *by someone*." *Id*. at 270 (quotation marks and citation omitted).

And, though the Court of Appeals majority failed to acknowledge it, this Court has long held that "[t]he [*corpus delicti*] rule is confined to confessions." *People v Porter*, 269 Mich 284, 289; 257 NW 705 (1934).[12] The *Porter* Court expressly distinguished "confessions" from "admissions" and held: "Here, defendant's exclamation and statements were not part of a confession nor did they, of themselves, amount to a confession of guilt. They were *merely admissions, which needed other facts to give them convicting force, and therefore were admissible on the* corpus delicti." *Id*. at 291 (emphasis added).[13]

---

[12] The Court of Appeals majority instead quoted a general summary from this Court of the *corpus delicti* rule: " 'In Michigan, it has long been the rule that proof of the corpus delicti is required before the prosecution is allowed to introduce the inculpatory statements of an accused.' " *Washington*, 344 Mich App at 339, quoting *People v McMahan*, 451 Mich 543, 548; 548 NW2d 199 (1996). But the two decisions upon which *McMahan* relied involved *confessions*. See *People v Williams*, 422 Mich 381, 384; 373 NW2d 567 (1985) (reversing the lower court's holding that "the prosecution failed to produce evidence, independent of the defendant's *confession*, of the elements of premeditation and deliberation") (emphasis added); *People v Allen*, 390 Mich 383, 385; 212 NW2d 21 (1973) ("The question presented by this appeal is whether the corpus delicti of felony murder may be established without evidence independent of the accused person's *confession* of the essential element that distinguishes the offense of first-degree murder from second-degree murder.") (citations omitted; emphasis added).

[13] The *Porter* Court defined "confession" as "an acknowledgment of guilt" and explained that

> [a] confession, although differently phrased by different courts, being an acknowledgment, in express terms, by a party in a criminal case, of the truth

18

As the Court of Appeals dissenting judge concluded, the same is true in this case. See *Washington*, 344 Mich App at 347-350 (MARKEY, J., dissenting). Defendant's statement included only one of the two elements of the charged crime: the fact that defendant possessed body armor. He did not admit that he was a violent felon, which would have been necessary to make his statements a confession. *Porter*, 269 Mich at 291 ("[A]n admission of one, but not of all, the essential elements of the crime is not a confession.") (citation omitted).

For those reasons, the Court of Appeals majority erred by applying the *corpus delicti* rule so as to exclude defendant's admissions from the evidence that could be used to support introduction of the bulletproof vest into evidence.

## III. CONCLUSION

We hold that a defendant's constitutional right of confrontation may be violated when a trial witness's testimony introduces the substance of an out-of-court, testimonial statement by an unavailable witness. In this case, we find that such a violation occurred because Officer Stockwell's testimony clearly implied that Officer Lavers made a testimonial statement asserting that defendant possessed a bulletproof vest. That

---

of the crime charged, by the very force of the definition logically excludes: first, acts of guilty conduct; second, exculpatory statements; third, admission of subordinate facts that do not constitute guilt. . . .

. . . There must be some distinctive feature, showing guilt, in the fact acknowledged, and all other statements than those directly stating the fact of guilt are without the scope of the rule affecting the use of confessions. * * * Hence, the third ground of exclusion is that *the admission of subordinate facts, not directly involving guilt, do not constitute a confession.* [*Id*. at 290-291 (quotation marks and citations omitted; emphasis added).]

19

testimony, therefore, was erroneously admitted. The *corpus delicti* rule, however, does not apply to defendant's admissions that he possessed the bulletproof vest. We therefore affirm the Court of Appeals in part, reverse in part, and remand to the Court of Appeals to reconsider whether the Confrontation Clause violation was harmless beyond a reasonable doubt.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                              No. 165296

LANTZ HOWARD WASHINGTON,

    Defendant-Appellee.

_____

WELCH, J. (*concurring*).

I fully agree with the Court's opinion. I write separately because I question if, in a case such as this where defendant is charged with a crime that is linked to his status as a felon and defendant stipulated to that status, defendant's statements should be admissible without the prosecution first offering independent evidence of the *corpus delicti*. While I believe this is an important question, we have not been asked to overrule our precedent. I therefore agree that because defendant did not admit in his statements that he was a violent felon, his statements were not a confession. As a result, the *corpus delicti* did not need to first be established with independent evidence prior to the admission of the statements.

Defendant was charged under MCL 750.227g(1), which states that "a person who has been convicted of a violent felony shall not purchase, own, possess, or use body armor." An officer testified that during defendant's booking after he had been transferred to the St. Clair County Jail, the officer "overheard [defendant] say that he was wearing the body armor because he was afraid people were going to kill him." *People v Washington*, 344 Mich App 318, 325; 1 NW3d 320 (2022) (quotation marks omitted). Additionally, another

police officer authenticated a jailhouse telephone recording, wherein defendant told his mother that someone else gave him the vest, that he went to the police with the vest on, and that he feared for his life. *Id*. at 325-326. The Court of Appeals, in a split opinion, contended that the two statements made by defendant were confessions. See *id*. at 338. The majority found that the *corpus delicti* had not been established by independent evidence due to the Confrontation Clause violation. *Id*. at 338-339. Thus, without the prohibited testimony, the majority disallowed use of defendant's statements. *Id*. It noted that "[w]ithout direct or circumstantial evidence that [defendant] possessed the vest, the prosecution had no evidence that any crime had been committed." *Id*. at 339. Therefore, any error made by the trial court in permitting the prohibited testimony was not harmless. *Id*. at 338.

In the Court's opinion, Justice VIVIANO concludes that defendant's statements were not a confession because defendant did not admit to both elements of MCL 750.227g(1). Specifically, while defendant admitted that he possessed body armor (the bulletproof vest), defendant did not admit that he had previously been convicted of a violent felony. The Court further concludes that defendant's statements did not acknowledge guilt but rather provided an excuse for why he wore the body armor. For both of these reasons, the Court holds that the *corpus delicti* can be established using defendant's statements and that the Court of Appeals majority therefore erred in excluding defendant's statements from the evidence.

"*Corpus delicti*" (the body of the crime) is a common law concept originally applied in homicide cases in order to guard against a conviction on the basis of a confession where

2

no homicide was committed. *People v Cotton*, 191 Mich App 377, 384-385; 478 NW2d 681 (1991). The Court of Appeals summarized the rule's origins as follows:

> Many of the early cases in which the rule, as applied to homicide cases, is discussed were prosecutions for killings occurring aboard ships upon the high seas. Frequently in such cases no body was found, for obvious reasons. As a result, the argument was advanced, and with occasional success, that no conviction should be obtained absent some evidence, independent of the defendant's confession that there was an unlawful killing, and the evidence must include proof of the existence of a corpse. [*Id.* at 385.]

In order to prove the *corpus delicti*, the prosecution must establish through direct or circumstantial evidence: (1) a specific injury and (2) criminal agency as the source of the injury. *People v Konrad*, 449 Mich 263, 269-270; 536 NW2d 517 (1995), citing *Cotton*, 191 Mich App at 394.

"[I]t has long been the rule that proof of the corpus delicti is required before the prosecution is allowed to introduce the inculpatory statements of an accused." *People v McMahan*, 451 Mich 543, 548; 548 NW2d 199 (1996). The rule is designed "to prevent the use of a defendant's confession to convict him of a crime that did not occur." *Konrad*, 449 Mich at 269, citing *People v Williams*, 422 Mich 381, 391; 373 NW2d 567 (1985), and *People v Hughey*, 186 Mich App 585, 587-588; 464 NW2d 914 (1990). When analyzing whether a confession has been made as to the *corpus delicti*, a confession is more than an admission of a fact; a defendant must admit to all elements of a crime and acknowledge guilt. See *People v Porter*, 269 Mich 284, 289-290; 257 NW 705 (1934).

*Porter* set forth the requirement that the essential elements of a crime must be admitted by a defendant in order to be considered a confession such that the *corpus delicti* must then be proven by independent evidence. In that case, the defendant was accused of

3

arson with intent to defraud an insurance company. *Id*. at 286. In order to prove arson, the prosecution had to demonstrate both that a fire occurred and that defendant intentionally set the fire.

At trial, the defendant provided a lengthy description of the sequence of events, which was in part contradicted by other evidence. *Id*. at 287-289. In order to prove that the defendant set the fire, the prosecution elicited testimony from a deputy sheriff, who recounted statements made by the defendant. The deputy testified that, according to the defendant,

> she had been cleaning [the] house; had lighted papers which had accumulated in the stove in the front room; when she came back from the store she discovered a fire in the attic and got excited, went out to the road, stopped a car and told the driver there was a fire at the home, but no attention was paid to her; so she walked to her mother's house; she thought the fire was caused from the stove; it was first in the attic around the chimney; everything had been destroyed; she had saved no clothing; she did not know how the things got into the garage nor what had become of them. [*Id*. at 289.]

The defendant was convicted.

On appeal, the defendant argued that her conviction should be reversed. In order to prove the arson charge, the prosecution had to prove not only that a fire occurred but that "it was unlawfully caused by a person." *Id*. Defendant argued her conviction should be set aside because her statements were "incompetent as evidence of the *corpus delicti*." *Id*. We affirmed her conviction, finding that

> an admission by word or act of an inculpatory fact from which the jury may or may not infer guilt, but which falls short of being an acknowledgment of guilt, is not a confession. Also an admission of one, but not of all, the essential elements of the crime is not a confession. [*Id*. at 291 (quotation marks and citation omitted).]

4

Specifically, the defendant never admitted she intentionally set the fire. Rather the statements all were pieces of the pie that the prosecution used to prove the *corpus delicti*. *Porter* further stated:

> If the fact admitted necessarily amounts to a confession of guilt, it is a confession. If, however, the fact admitted does not of itself show guilt but needs proof of other facts, which are not admitted by the accused, in order to show guilt, it is not a confession[.] [*Id*. at 290.]

Contrary to other jurisdictions, our courts have long held that the *corpus delicti* rule "require[d] that the prosecution show evidence of every necessary element of the crime before a confession could be used" against a defendant. *Cotton*, 191 Mich App at 386, citing *People v Allen*, 390 Mich 383; 212 NW2d 21(1973).[1] But in *People v Williams*, 422 Mich 381, 391; 373 NW2d 567 (1985), this Court narrowed the rule set forth in *Allen*, holding that a defendant need not always confess to every element of a crime to satisfy the *corpus delicti*.

In *Williams*, the defendant was convicted of first-degree murder of his neighbor. *Id*. at 384. Evidence was introduced at trial that the defendant told police that after the neighbor yelled at him, he waited until dark to enter her home and kill her. *Id*. at 386. Defense counsel objected to the use of the defendant's statement to the police, arguing that the prosecution first had to prove all the elements of first-degree murder, independent of the statement, including premeditation and deliberation. *Id*.

---

[1] In *Allen*, we adopted Judge LEVIN's dissenting opinion, holding that the underlying felony was an essential element of felony murder, thus requiring the prosecution to prove the element independently prior to admission of the defendant's confession. See *Allen*, 390 Mich at 385-386; *People v Allen*, 39 Mich App 483, 502; 197 NW2d 874 (1972) (LEVIN, P.J., dissenting).

5

The Court of Appeals reversed the defendant's conviction, finding that first-degree murder required premeditation and that the only evidence of premeditation was the defendant's statement to the police; without other independent evidence, the *corpus delicti* rule barred use of the statement. *Id*. at 387. We reversed, concluding:

> It is an inaccurate and unwarranted reading of the history and purpose of the corpus delicti rule that suggests the need for independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession. Such an understanding of the corpus delicti rule loses sight of the historic reason for the rule; to avoid conviction for a homicide that did not occur. The logic of the rule is not served by extending it to require proof, *aliunde* the defendant's confession, not only that a particular deceased lost his life and that the loss is a result of criminal agency but, in addition, proof of the aggravating circumstances which move the seriousness of the crime up the scale of criminal accountability (measured by the severity of the penalty) from manslaughter to second-degree murder or to first-degree murder. Whatever the aggravating circumstances which constitute a crime, second-degree murder instead of manslaughter, or first-degree murder instead of second-degree murder, the danger that a defendant would confess to a criminal killing which never occurred is adequately obviated when it is shown, other than by the accused's confession, that the deceased victim died as a result of a criminal agency. [*Id*. at 391.]

In short, we found that the *corpus delicti* could be established via a defendant's confession without the prosecution presenting independent evidence as to every element of the killing crime. Rather, the *corpus delicti* could be established by the defendant admitting to having killed someone and having some agency in the killing. The prosecution did not need to present evidence as to the aggravating circumstances of the criminal killing. Justice MICHAEL CAVANAGH dissented, noting that the *corpus delicti*—and all elements of the crime—had long been required to be proven with independent evidence prior to the

6

admission of a defendant's confession and that the Court's holding was a radical change in our jurisprudence. *Williams*, 422 Mich at 393 (CAVANAGH, J., dissenting).

*Williams* was then extended by the Court of Appeals to felony-murder cases in *People v Hughey*, 186 Mich App 585; 464 NW 2d 914 (1990). In that case, the Court found that

> the purpose of the corpus delicti rule is also served in felony-murder cases if it is merely required that the prosecutor establish a death and that the death resulted because of some criminal agency, without requiring the additional showing of the remaining elements of felony murder, including the commission of the underlying felony. In both cases, by establishing that a death has resulted because of a criminal agency, the possibility of a defendant confessing to a nonexistent homicide is precluded. [*Id.* at 588.]

And then in *Cotton*, the defendant and two co-conspirators were charged with assault with intent to rob while armed and conspiracy to commit armed robbery; the defendant was also charged with malicious destruction of property and assault and battery. *Cotton*, 191 Mich App at 379. All of the defendants made statements to the police that they had put a gun to the head of the victim and outlined how they planned the robbery. *Id*. at 382-383. These confessions were presented by the prosecution at the preliminary examination. *Id*. at 379. The Recorder's Court quashed the bindover as to the charges for assault with intent and conspiracy, determining that the prosecutor had failed to establish the *corpus delicti* without the aid of the defendants' confessions. *Id*. The Court of Appeals reversed, holding that the *corpus delicti* had been independently satisfied based on evidence produced at the preliminary examination. *Id*. at 392. Relying on *Williams* and *Hughey*, the *Cotton* Court noted:

> [T]he corpus delicti rule is satisfied in any criminal case if the prosecution shows that the specific injury or loss has occurred and that some person's

7

criminality was the source or cause of the injury. A defendant's confession then may be used to elevate the crime to one of a higher degree or to establish aggravating circumstances. [*Id*. at 389.]

The *Cotton* Court reiterated that "most courts have held that the accused's identity as the perpetrator of the crime is not an element of the corpus delicti." *Id*. at 386. Thus, assuming that the *corpus delicti* is independently established, a confession or admission may be used to establish the identity of the perpetrator. *Id*.[2]

Turning back to this case, I take no issue with the Court's point that in order to establish a confession, a defendant typically must confess to all elements of the crime. MCL 750.227g(1) requires that the prosecutor prove that (1) a person (2) owned, possessed, or used body armor and that (3) the person had been previously convicted of a violent felony. Defendant argues that the third element is already satisfied here because he stipulated at trial that he had been convicted of a violent felony. In essence, the prosecution simply had to prove that defendant possessed the vest. The prosecution argues that we should abolish the *corpus delicti* doctrine all together. While I do not believe we can reach these arguments without overturning established precedent and reaching beyond the scope of what we asked the parties to address here, *Williams* and *Cotton* demonstrate that our courts have carved out exceptions to the general rule set forth in *Porter* that all elements of a crime must be admitted by a defendant in order to excuse the prosecution from first having to introduce independent evidence of the *corpus delicti*.

---

[2] See also *People v King*, 271 Mich App 235, 237; 721 NW2d 271 (2006) (explaining that the *corpus delicti* of accessory after the fact is the same as the *corpus delicti* of the underlying crime itself, and therefore, "because the prosecutor had established the *corpus delicti* for both murder and unlawfully driving away an automobile, the trial court properly admitted defendant's confession to being an accessory after the fact to murder and an accessory after the fact to unlawfully driving away an automobile").

The purpose of the *corpus delicti* rule "is to prevent errors in convictions based upon *untrue confessions* alone[.]" *Smith v United States*, 348 US 147, 153; 75 S Ct 194; 99 L Ed 192 (1954) (quotation marks and citation omitted; emphasis added). The rule is derived specifically from the concern that "[c]onfessions may be unreliable because they are coerced or induced . . . ." *Id.* If the purpose of the *corpus delicti* rule is to protect defendants from having a confession used against them where there is no independent evidence supporting that confession, I question how that purpose is accomplished here by requiring defendant to admit to his status as a felon in addition to his possession of the vest in order to trigger the rule's protection. As a practical matter, a defendant who is accused of this crime, which includes conviction of a violent felony as an element of the offense, when questioned about the crime, is not likely to state outright, "I possessed body armor," and "I'm a convicted felon." And yet the same concerns that led to the requirement in our caselaw that the prosecution must prove the *corpus delicti* prior to the admission of a defendant's statements still exist in a case such as this.

For these reasons, I concur fully with the Court's opinion.

Elizabeth M. Welch

9